J-S05015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | No. 2972 EDA 2024 |

Appeal from the Order Entered October 8, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000299-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: R.C.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | No. 2973 EDA 2024 |

Appeal from the Decree Entered October 8, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000381-2024

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 4, 2025**

S.B. ("Mother") appeals from the decree entered on October 8, 2024

that involuntarily terminated her parental rights to her biological daughter,

_____

[*] Former Justice specially assigned to the Superior Court.

R.B. a/k/a R.C.B. ("R.B."), who was born in March 2022.[1]  Separately, Mother also appeals the order entered on October 8, 2024, which changed R.B.'s permanency goal from reunification to adoption.[2]  We affirm.

The Philadelphia Department of Human Services ("DHS" or "the Agency") first became involved with this family in May 2018, when Mother's older daughter and R.B.'s sibling, A.B., was removed from Mother's care due to Mother's "substance abuse issues."  Dependency Petition, 3/30/22, at ¶ 5(d).  Thereafter, both Mother and R.B. tested positive for phencyclidine ("PCP") at the time of R.B.'s birth in March 2022.  **See** N.T., 10/8/24, at 5. On March 25, 2022, DHS was granted emergency protective custody of R.B. upon her release from the hospital.  This placement was confirmed at a shelter care hearing three days later.  On April 4, 2022, the trial court adjudicated R.B. dependent and established her initial permanency goal as reunification with Mother.  R.B. was placed in kinship care with her maternal cousin, E.B., who is a pre-adoptive resource.  **See id**. at 12.  We note that R.B. has been

---

[1]  Mother named S.W. ("Father") as R.B.'s biological father, although he does not appear on R.B.'s birth certificate.  No other individual has ever come forward to challenge Mother's assertion of paternity.  Father's location was unknown throughout these proceedings and there is no indication that he ever participated in either the underlying dependency or termination matters.  On October 8, 2024, the trial court filed decrees that involuntarily terminated the parental rights of Father and any unknown father.  Neither Father nor any other individual appealed these separate termination decrees.

[2]  On December 3, 2024, this Court *sua sponte* consolidated the above-captioned cases pursuant to Pa.R.A.P. 513 due to the presence of closely "related parties and issues" in both matters.  Order, 12/3/24, at 1.

diagnosed with Angelman syndrome, which impedes her ability to communicate. *See id*. at 13.

In furtherance of reunification, the court directed Mother to, *inter alia*, participate in parenting classes, undergo dual diagnosis for mental health and substance abuse concerns, and submit to random drug testing. Thereafter, the community umbrella agency ("CUA") assigned to Mother's case referred her for mental health, substance abuse, and anger management treatment. *See id*. at 7. Between September 2022 and July 2024, the court held regular permanency review hearings, during which time Mother's compliance and progress was largely minimal. Specifically, the court was repeatedly forced to reinitiate Mother's referrals to parenting classes and services related to her mental health, substance abuse, and anger management concerns on multiple occasions. She ceased attending permanency review hearings as of December 2022.

Mother was initially represented in the dependency proceedings by her court-appointed counsel, Neil Marc Krum, Esquire. The court also appointed Lisa Marie Visco, Esquire, to act as R.B.'s guardian *ad litem* ("GAL"). On June 11, 2024, the court appointed Jacqueline M. Chandler, Esquire, to replace Attorney Krum as Mother's counsel in the dependency proceedings. The last such hearing that occurred prior to these subject proceedings was on July 16, 2024. The same day, the court scheduled the next permanency review hearing for October 8, 2024.

On September 27, 2024, DHS filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[3]  The same day, the Agency also filed a petition to change R.B.'s permanency goal to adoption.  The certificates of service attached to these filings and the relevant dockets indicate that the Agency served copies of both petitions upon Attorney Chandler and the GAL.

On September 30, 2024, the trial court scheduled a joint hearing on both petitions for October 8, 2024, the date previously reserved for the permanency review hearing.  During the consolidated termination/goal change hearing, the Agency presented the testimony of CUA case manager Danita Garison Lyburn.  Mother did not appear for the hearing and, consequently, did not testify.  Attorney Chandler participated in the hearing on behalf of Mother

---

[3]  Although the trial court did not appoint counsel for R.B. pursuant to 23 Pa.C.S. § 2313(a), GAL appeared on her behalf and represented her at the joint hearing.  Our Supreme Court has held that the mandate of § 2313(a) is satisfied where the court has "appointed a [GAL] who represents the child's best interests" in the proceedings and the child's preferred outcome is "incapable of ascertainment because the child is very young and pre-verbal" such that there can be no conflict between their legal interests and best interests." *In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018).  Insofar as R.B. was two years old and has been diagnosed with a developmental disability that impedes her ability to effectively communicate, we find no structural error in this case.  *Id*.; *see also In re Adoption of K.M.G.*, 240 A.3d 1218, 1238 (Pa. 2020) (charging this Court to engage in "limited *sua sponte* review of whether children have been afforded their statutory right to legal counsel when facing the potential termination of their parents' parental rights.").

with respect to both petitions.[4]  Immediately after the hearing, the trial court filed a decree that involuntarily terminated Mother's parental rights and a separate order that changed R.B.'s permanency goal to adoption.

On November 6, 2024, Mother filed timely notices of appeal and concise statements of error complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) at both cases.[5]  On November 27, 2024, the trial court filed a responsive Rule 1925(a)(2)(ii) opinion.

Mother has raised one issue:  "Whether the court erred in finding that DHS had made reasonable efforts as to service.  Mother's due process rights were violated when [the] Philadelphia Solicitor's [O]ffice failed to serve notice of the termination of parental rights and goal change to adoption petitions to

_____

[4]  This Court may raise questions regarding an indigent parent's right to counsel pursuant to 23 Pa.C.S. § 2313(a.1) *sua sponte*.  **See In re X.J.**, 105 A.3d 1, 4 (Pa.Super. 2014).  We note that Attorney Chandler was never appointed at, nor entered her appearance in, the termination case. Nonetheless, this Court has previously countenanced situations in which an attorney appointed to represent a parent in a dependency action subsequently represents them in a termination of parental rights hearing without a formal appointment.  **See In re Adoption of L.B.**, 258 A.3d 506, 2021 WL 2396340, at *14-*15 (Pa.Super. 2021) (non-precedential decision); **see also**, **e.g.**, **Commonwealth v. D'Amato**, 856 A.2d 806, 822 (Pa. 2004) (holding that criminal defendant's right to counsel was not violated when an attorney who had not formally entered their appearance nonetheless represented the defendant during a critical stage of the criminal trial).  Consequently, we find no deficiency with respect to Mother's representation at the hearing.

[5]  These filings erroneously list Attorney Chandler as the appealing party. Accordingly, the trial court refers to Mother as "J.C." throughout its Rule 1925(a)(2)(ii) opinion.  **See generally** Trial Court Opinion, 11/27/24, at 1-6.

[M]other at her last known address."[6]   Mother's brief at 3.   We review termination decrees and permanency goal change orders for an abuse of discretion.  *See Interest of Z.N.B.*, 327 A.3d 241, 247-48 (Pa.Super. 2024); *Interest of Z.B.*, 315 A.3d 153, 160 (Pa.Super. 2024).

Although Mother has styled her arguments concerning the alleged lack of notice as encompassing both of the above-captioned cases, her arguments solely discuss the requirements of notice with respect to termination of parental rights proceedings.  *See* Mother's brief at 7-10.  To the extent that Mother intended to challenge notice with respect to the goal change petition, we conclude that she has waived any such argument for lack of development. *See Interest of R.H.*, 320 A.3d 706, 716 (Pa.Super. 2024) (holding that a party waives a claim by failing to provide "citation to relevant authority" or "to develop the issue with any particularity").  Accordingly, we will solely address Mother's claim concerning notice of the termination petition and hearing.

In pertinent part, Mother's argument is best summarized as follows: "Parents' parental rights should not be terminated, when they were not duly

_____

[6]  In her brief, Mother has raised for the first time an argument concerning the merits of the trial court's termination decree pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  *See* Mother's brief at 10-14.  Critically, however, Mother failed to include this claim in her Rule 1925(a)(2)(i) and (b) statement, which includes only the claim related to notice of the underlying petitions.  *See* Concise Statement, 11/6/24, at 1 (unpaginated).  Accordingly, Mother has waived all potential claims related to the trial court's findings pursuant to § 2511(a) and (b).  *See* Pa.R.A.P. 1925(b)(4)(vii); *In re K.C.*, 903 A.2d 12, 16-17 (Pa.Super. 2006).

and properly served with notice of the termination trial and the grounds for termination of their parental rights." Mother's brief at 7. DHS counters that Mother waived this claim in the trial court by failing to object to the allegedly defective notice at the termination hearing. *See* DHS brief at 10-12.

It is well-settled that "any individual whose parental rights are to be terminated must be afforded due process." *In re Adoption of K.M.D.*, 261 A.3d 1055, 1059 (Pa.Super. 2021). In this context, "[d]ue process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *Id*. The Adoption Act requires that "[a]t least ten days' notice shall be given to the parent or parents . . . whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require." 23 Pa.C.S. § 2513(b); *see also* Pa.O.C.R. 15.4(a)(3). Rule 15.4(b)(3)(A)(iii) also allows for notice of the hearing to be provided by electronic transmission. The Orphans' Court Rules similarly require that notice be provided at least ten days prior to the termination hearing. *See* Pa.O.C.R. 15.4(c). Finally, an agency must undertake a "good faith" effort to provide a targeted parent with notice of a termination hearing. *K.M.D.*, 261 A.3d at 1060 (internal citations omitted). Overall, the party petitioning for termination "bears the burden to prove proper service by its affirmative act." *Id*.

Although Mother asserts in this Court that the Agency failed to provide her with adequate notice of these proceedings, we note that Mother's counsel affirmed during the hearing that Mother had, in fact, received notice:

THE COURT: . . . I do not see [Mother]. Do we have good service?

[AGENCY ATTORNEY]: Yes, Your Honor. We did a parent locator search for [M]other. Notice was delivered to [M]other via personal – deliver to [M]other's address via person[al] service and via overnight and regular mail. Mother also verbally confirmed to CUA that she knew of today's hearing. I don't believe there's any objection to – for service?

THE COURT: Ms. Chandler?

[ATTORNEY CHANDLER]: **That's correct, Your Honor.**

N.T., 10/8/24, at 4-5 (emphasis added).

As this Court has previously stated, a party waives claims regarding sufficiency of notice in termination of parental rights proceedings when their attorney subsequently participates in the termination hearing without objecting to the allegedly defective notice. *See In re Adoption of W.C.K.*, 748 A.2d 223, 228 (Pa.Super. 2000), *overruled on other grounds*, *In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1287-89 (Pa.Super. 2011); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Instantly, Mother's attorney not only failed to raise an objection but affirmed that her client had, in fact, received notice of the at-issue proceedings. The fact that Mother's claim raises a due process concern is of no moment because Pennsylvania law permits constitutional issues to be waived. *See*, *In re J.M.Y.*, 218 A.3d 404, 417 (Pa.

2019) (observing, "[e]ven constitutional challenges must be brought in a manner specified by law . . . or else they are waived."). As there are no properly preserved issues for our review, we affirm both the order changing R.B.'s permanency goal to adoption and the decree terminating Mother's parental rights.

Order affirmed. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/4/2025