J-A16029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHAWN P. STANGS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIZABETH M. LAYTON | : | No. 3208 EDA 2024 |

Appeal from the Order Entered October 24, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2020-03404

| | | |
|---|---|---|
| SHAWN P. STANGS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIZABETH M. LAYTON | : | No. 3209 EDA 2024 |

Appeal from the Order Entered October 25, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2020-03404

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED SEPTEMBER 4, 2025**

In this consolidated matter, Shawn P. Stangs (Father) appeals from two orders entered by the Montgomery County Court of Common Pleas. The October 24, 2024[1] order appointed a parenting coordinator for Father and

---

[1] Although this order was docketed on October 24, 2024, the docket entry states that Pennsylvania Rule of Civil Procedure 236 notice was provided on
*(Footnote Continued Next Page)*

Elizabeth M. Layton (Mother) in their custody case.  Father and Mother share three children: two sons, L.S. (now age 13) and G.S. (now age 9), and one daughter, R.S. (now age 11) (collectively, the Children).  The October 25, 2024 order, *inter alia*, permitted Mother to enroll the Children in sports and extracurricular activities, over Father's objection.  After review, we affirm.

The record discloses the following factual and procedural history.  Father and Mother have been engaged in a lengthy custody and support dispute regarding the Children.  The parents share legal and physical custody of the Children.  One point of contention between the parents has been the Children's participation in extracurricular activities, particularly whether their older son, L.S., can participate in travel baseball.

In February 2024, Mother filed a Petition for Special Relief seeking a trial court order directing Father to consent to L.S. playing travel baseball and appointing a parenting coordinator.  A hearing on the petition began on April 4, 2024, but was cut short by an emergency and rescheduled.  In the meantime, the court entered a temporary order allowing Mother to enroll L.S. in travel baseball for the upcoming season.  In June 2024, Father filed a

_____

October 25, 2024.  Thus, pursuant to our Appellate Rules, the date of entry of this order was October 25.  **See** Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)."). However, for clarity between the two orders, we refer to this order as the October 24, 2024 order.  Further, although the second order was also dated October 24, 2024, it was not filed until October 25, 2024, and Rule 236 notice was given that day; thus, we refer to this order as the October 25, 2024 order.

Petition for Contempt against Mother. Thereafter, Mother filed an amended Petition for Special Relief to add an issue regarding one of the other children.

The trial court held a hearing on October 9, 2024 to address the parties' outstanding petitions. During the hearing, Father made an oral motion to dismiss Mother's petitions for improper pleading. Thus, the court held the petitions in abeyance and ordered the parties to submit briefs. Father later waived his right to file a brief, and the court issued the orders on appeal.

The October 24, 2024 order appointed a parenting coordinator for the parties for a six-month term. The order, *inter alia*, detailed the parenting coordinator's role and scope of authority, and that Mother and Father would evenly split the parenting coordinator's fees.

The October 25, 2024 order allowed Mother to enroll the Children in sports and extracurricular activities, over Father's objection. The order stated that if a child had a tournament on a holiday of the non-custodial parent, the child could participate in the event, but the non-custodial parent would receive makeup time from the custodial parent.

Father timely appealed from both orders on November 25, 2024. **See** Pa.R.A.P. 903(a) (stating notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"); 1 Pa.C.S.A. § 1908 (excluding Saturday or Sunday from the computation of time when the last day of the time period falls on Saturday or Sunday). This Court consolidated the appeals *sua sponte* on February 11, 2025. Father presents the following two issues for our review:

- 3 -

1. Did the trial court err by prohibiting [Father] from introducing evidence regarding his inability to afford to pay a Parenting Coordinator?

2. Did the trial court err by modifying custody without a petition to modify custody pending and without examining the custody factors?

Father's Brief at 4-5.

We begin with our well-settled standard of review for custody matters:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Wilson v. Smyers*, 284 A.3d 509, 515 (Pa. Super. 2022) (quoting *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018)). Importantly, it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Id.* at 520 (citation omitted). Further, "[t]he evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court." *White v. Malecki*, 296 A.3d 1210, 1215 (Pa. Super. 2023).

In a custody-related matter, the court's "paramount concern is the best interests of the children involved." *A.L.B. v. M.D.L.*, 239 A.3d 142, 148 (Pa.

Super. 2020) (citation omitted). When ordering any form of custody, a court must determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to specific factors that affect the safety of the child.[2] **See** 23 Pa.C.S.A. § 5328(a). However, we have clarified that a court is not required to address the Section 5328(a) factors when an order merely deals with a discrete and distinct issue. **See M.O. v. J.T.R.**, 85 A.3d 1058, 1063 (Pa. Super. 2014) ("Because the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the [c]hildren's best interest.").

Regarding parenting coordinators, Pennsylvania Rule of Civil Procedure 1915.11-1 provides, in relevant part:

> **(b) Parenting Coordinator Appointment.**
>
> (1) *Appointment.* After a final custody order has been entered, a judge may appoint a parenting coordinator to resolve parenting issues in cases involving repeated or intractable conflict between the parties that affects the implementation of the final custody order.

---

[2] In 2024, the General Assembly enacted significant amendments to the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." **Velasquez v. Miranda**, 321 A.3d 876, 886 n.6 (Pa. 2024). Kayden's Law expanded the factors to be considered in the court's best interest analysis and required the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child." **Id.** (citation omitted). These statutory amendments took legal effect on August 13, 2024. As the trial court entered the instant orders in October 2024, Kayden's Law applies to this appeal.

> (i) A parenting coordinator should not be appointed in every case.
>
> (ii) The appointment may be made on a party's petition or the court's motion.

Pa.R.C.P. 1915.11-1(b)(1)(i-ii).

In his first issue, Father argues that the trial court erred by prohibiting him from introducing evidence regarding his inability to afford a parenting coordinator. Father's Brief at 9. Father claims that under Pennsylvania law, a parent can contest the appointment of a parenting coordinator by showing that the parent cannot afford the coordinator. *See id.* at 9-10.[3] Father asserts that, at the hearing on October 9, 2024, the trial court did not admit his evidence because he failed to provide his exhibits in advance, in accordance with the court's scheduling order. *See id.* at 10. The October 9 hearing was rescheduled from September 4, 2024. According to Father, this resulted in two scheduling orders, and he reasonably believed that the later order from August 2024 modified the earlier order from July 2024. *See id.* Father claims that he complied with all the requirements of the August 2024 scheduling order. *See id.*

---

[3] To support this contention, Father cites *S.S. v. K.F.*, 189 A.3d 1093 (Pa. Super. 2018). In his parenthetical explanation, Father states that this case held that the trial court "abused its discretion by requiring parents to equally share financial burden without making the necessary inquiry into the parties' financial situations." Father's Brief at 10. However, the *S.S.* case did not involve a parenting coordinator or a parent's ability to pay for a coordinator. Instead, the case involved parents paying for their children's school tuition. Thus, the *S.S.* case is irrelevant to our analysis here.

Before addressing Father's first issue, we must determine whether he preserved it. The trial court wrote a statement in lieu of an opinion and urged us to dismiss Father's appeals entirely because Father "has, at every turn, flouted the rules and waived any issue on appeal." Trial Court's Statement in Lieu of Opinion (T.C.O.), 2/24/25, at 16. We note with dismay that Father failed to address any of the trial court's arguments regarding waiver and dismissal, even though the court thoroughly discussed them in its opinion, as explained below.

First, although this is a Children's Fast-Track Appeal, Father failed to contemporaneously file his Appellate Rule 1925(b) statements with his notices of appeal, as required by the Rules of Procedure. Per orders dated January 3 and 13, 2025, this Court declined to dismiss Father's appeals for that reason. This Court noted that the trial court did not order Father to file his concise statements, but he did so on December 24, 2024. However, December 24 was nearly the deadline for the trial court to transmit the record to this Court. *See* T.C.O. at 3; Pa.R.A.P. 1931(a)(2). The trial court noted that Father's "failure to comply with the rules has stifled this lower [c]ourt's own ability to comply with [Appellate Rule] 1925(a)(2)(ii) by preparing an opinion stating the reasons for the orders on appeal." T.C.O. at 1.

Additionally, Father's concise statements were attached to two new notices of appeal (one of which was captioned as an amended notice of appeal) from the same orders. *See id.* at 4. The Montgomery County Prothonotary sent the new notices of appeal to this Court. *See id.* Thereafter, this Court

issued rules to show cause as to why the new appeals should not be dismissed as unnecessary and duplicative. Father failed to respond to the rules to show cause; thus, this Court dismissed his new appeals. As the trial court notes, these new appeals were also untimely. *See id.*; Pa.R.A.P. 903(a) (stating notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken").

Second, Father failed to timely pay the filing fee for his appeals. On January 15, 2025, this Court ordered Father to either pay the requisite filing fee or, if applicable, file a request to proceed *in forma pauperis* before the trial court within ten days of the order.

Third, Father failed to timely file the docketing statements for both appeals. *See* Pa.R.A.P. 3517. On January 30, 2025, this Court ordered Father to file the statements by February 10, 2025, which he did.

Fourth, and most importantly, the trial court notes that Father failed to order the transcript of the October 9, 2024 hearing that led directly to the two orders on appeal. *See* T.C.O. at 6-7. The trial court asserts that "[n]either an attack on those orders nor appellate review of them can proceed in the absence of a transcript of what occurred at that pivotal hearing." *Id.* at 7.

It is clear from the record that Father was aware of his obligation to order the relevant transcript. Father's November 25, 2024 notices of appeal stated that "[t]he matter occurred over multiple listings, of which portions of the transcript of some of the hearings have already been obtained, and counsel for [Father] [is] ordering the remaining portions." Notices of Appeal,

11/25/24. Likewise, his December 24, 2024 notices of appeal contained the same statement regarding the transcripts. *See* Notices of Appeal, 12/24/24.

Furthermore, on March 18, 2025, five months after the October 9, 2024 hearing, Father's counsel requested a thirty-day extension of time to file his brief. In response to Father's request and by order dated March 21, 2025, this Court noted that Father's counsel:

> [B]aldly states that "[Father] is awaiting delivery of the transcript from the October 9, 2024" hearing and that "[t]he matters complained of for this matter occurred within that date of testimony" and in light of the fact that review reveals that Counsel [] failed to order the transcript as required pursuant [to] Pa.R.A.P. 904 (c) but instead Counsel waited until receiving an email from the court reporter's office as to the transcript last week in light of [Mother's] numerous inquiries, [Father's] request for a thirty day extension is **DENIED**.
>
> Counsel shall be granted a seven (7) day extension in which to file [Father's] brief. [. . .]

Order, 3/21/25 (emphasis in original and citation omitted). Appellate Rule 904(c) requires that:

> **(c) Request for Transcript.** The request for transcript contemplated by [Appellate Rule] 1911 or a statement signed by counsel that either there is no verbatim record of the proceedings or the complete transcript has been lodged of record **shall accompany the notice of appeal**, but the absence of or defect in the request for transcript shall not affect the validity of the appeal.

Pa.R.A.P. 904(c) (some emphasis added). Given Father's statements in his notices of appeal and his request for an extension of time to file his brief, he was aware of his obligation to order the October 9, 2024 transcript.

Father included the October 9, 2024 transcript in his reproduced record. However, that transcript is not included in the certified record we received from the trial court. It is well settled that the burden is ultimately on the appellant to ensure that the record is complete on appeal. *See* Pa.R.A.P. 1921, Note; *see also, e.g., Mazzarese v. Mazzarese*, 319 A.3d 586, 596 (Pa. Super. 2024) ("This Court has clearly stated it is the appellant's responsibility to ensure that the certified record contains all documents necessary so that this Court is able to review [his] claims.") (citation omitted). It is also well settled that this Court may review and consider only items that are part of the certified record.[4] *See, e.g., Mazzarese*, 319 A.3d at 596 ("[W]e have long held any documents that are contained in the reproduced record but are not a part of the official certified record do not exist.") (citation omitted). By failing to ensure that the hearing transcript was part of the certified record, Father has waived our review of the hearing and any issue that requires the transcript for appellate review. *See* Pa.R.A.P. 1911(d);

_____

[4] We note with displeasure that the October 9, 2024 hearing transcript is not the only document that Father included in his reproduced record that is not a part of our certified record. In his reproduced record, Father included an email and pretrial memorandum that he sent to the trial court's chambers, which he cites to in his brief. *See* Father's Brief at 7. Mother also stated that "Father cites to an email which is not an Exhibit or part of the Record and therefore, this Court may not rely upon it." Mother's Brief at 15, n.5. We have been unable to locate the email or pretrial memorandum in the certified record. Thus, we will not consider these documents in our appellate review. *See Mazzarese*, 319 A.3d at 596.

Pa.R.A.P. 1921, Note.  Thus, we are unable to reach the merits of Father's first issue. [5]

In his second issue, Father argues that the trial court erred by modifying custody without a petition for modification pending and without examining the Section 5328(a) custody factors.  *See* Father's Brief at 11.  Father asserts that the court's order allows Mother to enroll the Children in sports and

_____

[5] Although we are not permitted to consider the uncertified hearing transcript in Father's reproduced record for its merits, we note that it seemingly refutes his allegations.  Father asserts that the trial court erred by not permitting him to introduce exhibits regarding his inability to pay for a parenting coordinator because he failed to follow the court's scheduling order.  However, the transcript reflects that when Father's counsel attempted to introduce an exhibit, he said "[i]t goes to my client's **inability to pay for Mother automatically increasing expenses**, which are unnecessary."  R.R. at 227 (emphasis added).  Mother then noted that the only exhibits Father exchanged in advance were two transcripts, so all other exhibits should be precluded, per the scheduling order.  *See id.* at 227-229.  After hearing argument from both attorneys related to the two scheduling orders, the trial court reminded Father's counsel that he was required to submit any exhibits five days before the hearing, and the court prohibited Father from admitting his exhibit.  *See id.* at 231.  Thus, contrary to Father's argument on appeal, he argued to the trial court that his exhibit went to his inability to pay for Mother's expenses, not to show that he was unable to pay for a parenting coordinator.  *See id.* at 227.  Furthermore, Father testified extensively regarding his finances, expenses, and debts, and that he would not be able to afford a hypothetical bill for the parenting coordinator.  *See id.* at 304-09, 326-32.  The trial court also permitted Father to introduce three exhibits regarding his legal fees, even though he had not provided them in advance.  *See id.* at 327-29, 392.  Additionally, Father does not elaborate on the content of the excluded exhibits, to show how they would have supported his case.  Thus, beyond bald assertions that the trial court erred by prohibiting Father from introducing certain exhibits, Father fails to argue, or persuade us, that he was prejudiced by this decision, given his extensive testimony and the exhibits he was permitted to enter into evidence.  *See id.* at 392 (Father's exhibits F-1 through F-7 being admitted into evidence).  Therefore, Father's issue would fail on the merits.

extracurricular activities over Father's objection, which interferes with his custodial time. *See id.* The court's order provided that if a tournament fell on the holiday of the non-custodial parent, the non-custodial parent was to receive makeup time from the custodial parent. The order did not require makeup time when the tournament fell on a weekend. Thus, Father argues that the order effectuates a change in custody by altering the amount of custodial time either parent will have, when an event falls on a non-holiday, without requiring makeup time. *See id.* at 12-13. Because this was a change in custody, the trial court was required to examine the Section 5328(a) custody factors. *Id.* at 13. Additionally, Father asserts that the trial court could not modify custody without a pending modification petition before it, and, in doing so, violated his right to due process. *See id.*

We begin by noting that, on appeal, Father seems to abandon any argument related to legal custody. *Compare* Concise Statement of Errors Complained of on Appeal, 12/24/24, at ¶ 2(c) (raising an error related to Father's legal custody rights), *with* Father's Brief at 11-15 (making arguments related to the amount of custodial time and makeup time but not arguing legal custody), *and id.* at 8 (noting in summary of the argument section that the "trial court's order modified custody because it impacted [Father's] time with his [C]hildren . . . .)". Importantly, we will not make a legal custody argument for him. *See B.S.G. v. D.M.C.*, 255 A.3d 528, 535 (Pa. Super. 2021) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other

meaningful fashion capable of review, that claim is waived.") (citation omitted); ***Interest of R.H.***, 320 A.3d 706, 716 (Pa. Super. 2024) ("It is not the obligation of this Court [] to formulate Appellant's arguments for him.") (citation omitted).

Instead, Father appears to predicate his argument on physical custody. His claims relate to the Children's extracurriculars interfering with his custodial time and the lack of makeup time for events that occur on non-holidays. However, the trial court's October 25, 2024 order does not impact either parent's physical custody time. Instead, the order allows Mother to enroll the Children in sports and extracurricular activities over Father's objection. And "[i]f a tournament falls on a holiday of non-custodial parent, the child may participate in the event, however, the non-custodial parent shall receive makeup time from the custodial parent." Trial Court Order, 10/25/24. Thus, this order does not impact Father's custodial time. Even if Mother enrolls the Children in a sport or extracurricular activity which occurs during Father's custodial time, the order does not prohibit Father from exercising his custody while the activity is occurring. Presumably, provided there is no separate trial court order or parental agreement dealing with transportation, Father will be required to transport the Children to their activities during his custodial time. Nevertheless, this order does not limit Father's physical custody, as the order does not give Mother physical custody of the Children during extracurricular activities that otherwise occur while Father has physical custody.

Thus, the order did not change the type of custody or amount of custodial time either parent has with the Children; both parents still share both forms of custody. *See M.O.*, 85 A.3d at 1062 ("The cases in which we have applied Section 5328(a) have involved the award of custody as defined by Section 5323(a) or have involved a modification that also entailed a change to an award of custody."). Instead, the trial court decided a discrete custody-related issue regarding the Children's extracurricular activities because, after over a year of litigation, the parents were still unable to come to an agreement. *See* T.C.O. at 14 ("One intractable dispute warranting the services of the parenting coordinator that the parties have been litigating without letup for over a year and a half has been the [C]hildren's participation in sports and extracurricular activities."). Therefore, the trial court was not required to analyze the Section 5328(a) custody factors.

The trial court cited *M.O. v. J.T.R., supra*, to support its decision that it was not required to analyze the Section 5328(a) custody factors. *See* T.C.O. at 15. Father attempts to distinguish *M.O.* by arguing that it did not involve a change to the amount of custodial time that either party had with the children. *See* Father's Brief at 12. He argues that, in the instant case, unlike *M.O.*, the trial court's order changed "the amount of custodial time that either party will have with the [C]hildren where an event falls on a weekend without requiring 'makeup time.'" *Id.* at 12-13. Thus, the order changed custody and required a custody factor analysis. *See id.* at 13. However, as explained above, we disagree with Father that the trial court's order changed his, or

- 14 -

Mother's, physical custody time. Indeed, the order makes no mention of physical custody, beyond makeup time for the non-custodial parent on holidays. It merely allows the children to participate in activities important to them, regardless of which parent has custody at that time. Thus, we are not persuaded by Father's argument.

Nevertheless, in entering its order, the trial court was still required to consider the Children's best interests. The court explained its rationale as follows:

> It was in the [C]hildren's best interests to give the [M]other the ability to enroll the [C]hildren in extracurricular activities without the [F]ather's affirmative assent to each choice, and allow him compensatory time to make up for any interference with his custodial schedule on holidays [. . .]. The parties spent the better part of a year litigating before the undersigned whether their oldest would be permitted to play baseball, after that very dispute had been held over from the prior year before another judge, and it could only harm the [C]hildren for that sort of perpetual litigation over the activities of the [C]hildren's daily lives to continue occupying their and their parents' time and attention.

> The [c]ourt's solution of putting the [C]hildren's extracurricular activities in the hands of one parent, and allowing compensatory time to the other, while appointing a parenting coordinator to prevent every dispute from flaring up into a legal battle, was just and appropriate for the parents, and, as must be the polestar for any determination in custody, served the [C]hildren's best interests.

T.C.O. at 15 (internal citation omitted).

As explained, Father argued that the trial court improperly modified custody, altered his custodial time, and erred by not considering the Section

- 15 -

5328(a) custody factors. However, Father failed to argue how the trial court's decision did not serve the best interests of the Children. We discern no abuse of discretion in the trial court's finding that its order, entered with the hope of limiting the extensive litigation between the parents, served the Children's best interests. *See Wilson*, 284 A.3d at 520 (noting that it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility") (citation omitted).

Lastly, Father's arguments related to due process are waived because neither of his Appellate Rule 1925(b) statements raised an issue related to due process. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Further, the trial court did not address any argument related to due process. *See S.S. v. T.J.*, 212 A.3d 1026, 1031 (Pa. Super. 2019) ("Our law further makes clear that compliance with [Appellate Rule] 1925(b) is not simply a matter of filing any statement. Rather, the statement must be concise and sufficiently specific and coherent as to allow the trial court to understand the allegation of error and offer a rebuttal."). Moreover, as noted above, due process was not implicated because the court did not improperly modify custody. Father's second issue merits no relief.

In sum, Father waived appellate review of his first issue by failing to ensure that the relevant hearing transcript was included in the certified record. Father's second issue fails because we discern no error of law or abuse of

discretion in the trial court's decision regarding the Children's sports and extracurricular activities.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/4/2025