J-A28013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TERM. OF PAR. RIGHTS OF: W.M.R., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.M.R., MOTHER | : : : : : : | |
| | : | No. 1105 MDA 2025 |

Appeal from the Decree Entered July 16, 2025
In the Court of Common Pleas of York County Orphans' Court at No(s):
2025-0006a

| | | |
|---|---|---|
| IN THE INTEREST OF: W.M.R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.R., MOTHER | : : : : : | |
| | : | No. 1151 MDA 2025 |

Appeal from the Order Entered July 18, 2025
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000177-2023

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　**FILED FEBRUARY 25, 2026**

　　　E.M.R. (Mother) appeals from the decree entered in the York County Court of Common Pleas, which granted the petition of the York County Office of Children, Youth and Families (the Agency) and involuntarily terminated her parental rights to her now almost four-year-old daughter, W.M.R. (the Child), pursuant to the Adoption Act.  *See* 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8),

and (b). Mother also appeals the order which changed the Child's goal to adoption.[1, 2] After review, we affirm.

We discern the following factual and procedural history from the orphans' court's opinion and the certified record. The Child was born in April 2022. The Agency filed for emergency protective custody of the Child in July 2023. The Agency alleged that Mother and the Child were without housing and that Mother was not attending to the Child's medical needs.

The juvenile court granted the Agency's emergency petition, and the Agency took custody of the Child. The court held a shelter care hearing and continued the Child's placement in foster care. The court adjudicated the Child dependent in August 2023.

Mother's goals included: performing basic parenting tasks, such as keeping the Child safe from any physical or emotional abuse, making sure the Child was eating on time and had healthy meals, practicing good hygiene, and making sure the Child had appropriate clothing and shelter and was receiving adequate medical care; demonstrating her ability to care for the Child; obtaining stable housing; and maintaining stable income.

Throughout the case, there were continuous concerns about Mother's housing and employment instability, her intellectual capacity, her engagement

_____

[1] This Court consolidated Mother's appeals *sua sponte* on September 17, 2025.

[2] The Agency also filed a petition to terminate S.R.'s (Father's) parental rights to the Child, which was granted by the orphans' court. Father did not appeal the termination or goal change.

with services, her parenting skills, and her ability to care for the Child and keep the Child safe. At several permanency review hearings, the court never rated Mother's compliance with the permanency plan above "minimal," and rated her as having "minimal" or "no" progress toward alleviating the circumstances which necessitated the Child's placement.

In January 2025, approximately a year and a half after the Child was removed from Mother's care, the Agency filed a petition to involuntarily terminate Mother's parental rights, and a motion to change the Child's reunification goal to adoption. A termination hearing was held on April 8 and July 16, 2025. The Child was represented by legal counsel and a guardian *ad litem*. The Agency caseworker, a Justice Works Youth Care supervisor, a Catholic Charities family advocate, and three individuals from PA Child testified. The orphans' court ultimately changed the goal to adoption and terminated Mother's parental rights.

Mother timely filed this appeal. She raises the following three issues for our review, which we reorder for ease of disposition:

I. Whether the lower court erred in terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. Section 2511(a)(1), (2), (5), and (8) of the Adoption Act.

II. Whether the trial court erred in concluding that termination of parental rights would best serve the needs and welfare of the Child pursuant to Section 2511(b).

III. Whether the trial court erred in changing the goal from reunification to adoption when it concluded Mother failed to meet the goals and terminating her parental rights.

Mother's Brief at 5 (excess bolding, capitalization, and suggested answers omitted).

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the

- 4 -

court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267. Furthermore, the "trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Mother's rights under Section

2511(a)(1), (2), (5), (8), and (b).[3]  As we may affirm under any ground under

_____

[3] We note that the Agency's termination petition listed Section 2511(a)(1), (2), (5), and (8) as the grounds alleged for termination, but did not specifically list (b).  **See** Petition for Involuntary Termination of Parental Rights, 1/14/25, at ¶ 12.  Nevertheless, the petition addressed the Child's needs, welfare, and bonds under (a)(8), and noted its belief at the end of the petition that the petition best served the Child's needs and welfare.  The termination decree granted the Agency's petition, found that Mother had "forfeited her parental rights" with respect to the Child, and found that it was in the Child's best interest for the petition to be granted.  However, the decree was silent as to which specific subsections the orphans' court was terminating under.  At the end of the termination hearing, the court mentioned Section 2511(a)(1), (2), (5), and (8), but did not specifically mention (b).  **See** N.T., 7/16/25, at 87, 89-90, 93.  Within its discussion of the (a) subsections, the court analyzed the Child's bonds with her resource parents, Mother, and Father, and found that it was in the Child's best interest to terminate parental rights.  **See id.** at 88-90, 94-95.  On appeal, Mother challenges the court's termination under subsection (b), but she makes no argument that the Agency did not properly petition for termination under this subsection or that the court did not actually terminate her rights under (b).  All parties to the appeal and the orphans' court addressed (b).  Specifically, in its Appellate Rule 1925(a) opinion, the court addressed Mother's issue related to (b) by noting that it had already addressed that issue above when it analyzed (a)(8), where the court again noted the Child's pre-adoptive home, her bonds there, and her bond with Mother.  **See** Orphans' Court's Opinion (O.C.O.), 9/10/25, at 14.  Thus, even if there was an argument that the court's and Agency's failure to specifically cite Section 2511(b) was an error, Mother waived it by failing to raise it below or on appeal.  **See** Pa.R.A.P. 302(a); **In re B.C.**, 36 A.3d 601, 605 (Pa. Super. 2012); **Interest of R.H.**, 320 A.3d 706, 716 (Pa. Super. 2024).  Further, given that all parties seemingly assume that the court found the Agency met its burden of proof and terminated under (b), we decline to elevate form over substance.  Here, the court clearly addressed the Child's needs and welfare in its termination analysis.  Nevertheless, we remind the Agency and the orphans' court that it is vital that the grounds for termination under (a) and (b) are clearly delineated within the termination petition and within the court's reasoning either on the record, in the termination decree, or in the Appellate Rule 1925(a) opinion.

Section 2511(a), we review the court's decision as to Section 2511(a)(2).

That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [. . .]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citation omitted). On this point, we emphasize that parents "are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Id*. (citation omitted).

Here, the orphans' court determined that the Agency had proven the statutory grounds for termination under Section 2511(a)(2). The court noted:

The court adopts its reasoning from the previous matter as the issues that inform its reasoning are similar. The issue that the court faced in making its determination was that Mother had not meaningfully improved since the beginning of the case. It appeared Mother was not able to remedy the original conditions, and alternatively, if she could she was unwilling to do so.

Mother's housing situation and its more or less continuous fluidity has been addressed above. Her employment was likewise unstable and often unclear due to her not validating it with paystubs. This touches on her ability to provide essential care and subsistence. Mother, to be fair, often had a job and sometimes more than one job, but consistency and stability of employment were not as strong for her.

Mother was offered teams to support her, but Pressley Ridge, Catholic Charities and Justice Works closed out due to Mother's lack of cooperation, missed appointments, and failure to make progress. Mother also had a bail condition placed on her which prevented contact with the Child.[4] Mother did not at any point involve herself with the Child in a consistent and meaningful way which suggested she was in a position to meet [all the] needs of the Child. Supervised visits alone do not show she is capable of providing the care, control, and subsistence contemplated by 23 Pa.C.S. Section 2511(a)(2). The [A]gency satisfactorily proved this by clear and convincing evidence.

O.C.O. at 11-12 (internal citations omitted).

On appeal, Mother argues that she maintained consistent employment while receiving services. *See* Mother's Brief at 27. She participated with Justice Works for advocacy services. *Id.* Although Mother struggled financially, which hindered her ability to obtain stable housing despite being

---

[4] Although the record lacks detail, we clarify that Mother was charged with endangering the welfare of the Child, and a bail condition was placed on her forbidding her from having contact with the Child for some time.

employed, she was still able to keep a roof over her head.  ***Id.***  Mother also participated consistently in services for several years with Healthy Babies and Healthy Moms and Chimes.  ***Id.***  Mother asserts that, therefore, the Agency did not meet its burden.  ***Id.*** at 28.

Essentially, Mother appears to assert that she made some progress throughout the case, and, thus, termination was improper.  This argument fails to appreciate our standard of review in termination cases.  We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record.  ***See T.S.M., supra***.

Here, the record supports the orphans' court's findings.  For housing, Mother was never able to obtain and maintain safe, stable, and appropriate housing for herself and the Child.  N.T., 4/8/25, at 68.  The caseworker testified to at least seven addresses she had for Mother since the Child was adjudicated dependent.  ***See id.*** at 65-66.  Mother was unable to obtain any of those places on her own, and one of those places was in Massachusetts. ***See id.*** at 65-67.  The caseworker testified that, as of the second day of the termination hearing, she had no current address for Mother.  N.T., 7/16/25, at 57.

For employment, even when Mother was working, she did not consistently provide documentation, such as paystubs, to prove she was employed.  ***See*** N.T., 4/8/25, at 70; N.T., 7/16/25, at 51, 61.

For services, Mother closed out unsuccessfully with multiple service providers the Agency referred her to including: a Pressley Ridge team, Catholic

Charities, Justice Works, case management services through a mental health and intellectual and developmental disabilities program, and outpatient counseling. *See* N.T., 4/8/25, at 78-82, 96-97, 117; N.T., 7/16/25, at 19. Specifically, Justice Works closed unsuccessfully with Mother because it lost contact with her. N.T., 4/8/25, at 117. Catholic Charities closed unsuccessfully because of Mother's lack of progress and her lack of willingness to follow through to complete her goals. N.T., 7/16/25, at 19-20. The court found this testimony from Catholic Charities to be credible. *Id.* at 80.

Throughout the life of the case, when Mother was permitted to visit with the Child, her visits never progressed to partially supervised or unsupervised visits. *See id.* at 20, 30, 44, 53-54. Mother also sometimes forgot she had a visit. *See id.* at 23-24. There were concerns about the Child's safety during visits and snacks that Mother would bring to visits. *See* N.T., 4/8/25, at 100; N.T., 7/16/25, at 31-32. Mother's behavior during visits was often inappropriate. *See* N.T., 4/8/25, at 100. There was an issue with Mother's engagement with the Child and Mother being on her phone during visits. *See* N.T., 7/16/25, at 23, 31.

The caseworker testified that, as of the termination hearing, Mother could not obtain physical custody of the Child or meet the Child's safety needs. *See* N.T., 4/8/25, at 85, 90-91, 115. The caseworker recommended it was in the Child's best interest to terminate parental rights and change the reunification goal to adoption. *See* N.T., 7/16/25, at 60. The court found the caseworker's testimony to be credible and persuasive. *Id.* at 86.

Thus, the record supports the orphans' court's decision. Mother's repeated and continued incapacity, abuse, neglect or refusal caused the Child to be without essential parental care, control or subsistence. There was no true indication Mother could or would remedy the conditions which led to the Child's placement. We discern no error of law or abuse of discretion in the orphans' court's decision under Section 2511(a)(2).

Mother's second issue challenges the orphans' court's findings under Section 2511(b), the second part of the bifurcated analysis in termination of parental rights cases. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "courts should consider the matter from the child's perspective, placing [the child's] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citations omitted); *see also C.M.K.*, 203 A.3d at 261-62 (the focus of Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child) (citation omitted).

- 11 -

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the 'primary consideration' must be the child's 'developmental, physical and emotional needs and welfare.'" *K.T.*, 296 A.3d at 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." *Id.* at 1106 (citing *T.S.M.*, 71 A.3d at 267). Our Supreme Court also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. *Id.* (citing *T.S.M.*, 71 A.3d at 268; *In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014)).

Here, the orphans' court concluded that terminating Mother's parental rights was in the Child's best interest. The court explained:

> The Child cannot afford to wait indefinitely for stability. The [A]gency represented the Child is in a pre-adoptive home and that the Child is doing well there. The Child has a stronger bond with the pre-adoptive family than she does with Mother. The Child is safe. The Child is meaningfully engaged with services. . . .

O.C.O. at 14 (internal citations omitted). The court also noted at the termination hearing that:

> There is no time when the Child has ever been returned to either [M]other or [F]ather. As noted, the Child has lived continuously, stably, and in an environment that's been healthy and nurturing with the resource family since [September] of 2023. There are strong bonds with the family members, and the Child views the resource parents as her de facto parents. And I believe that it is in her best

interest not to terminate or sever that relationship by returning the Child to the biological parents. I think that there's a much more plausible basis to hopefully move toward permanency with these resource parents who are, in fact, pre-adoptive and who are not separating or divorcing at this time.

[. . .]

The bottom line is the Child is doing very well where she is. There is a parental bond with the resource parents. There is, I think, a limited parental bond with the biological mother and the Child, but I don't believe in what I've observed or heard from witnesses that it is as strong as the relationship between the resource mother and the Child. . . .

For all these reasons, I believe that this is a Child whose best interests are served by terminating parental rights so that she can seek permanency in her current placement.

N.T., 7/16/25, at 94-95.

On appeal, Mother argues that it would harm the Child to sever their relationship. Mother's Brief at 33. She asserts that she shares a bond with the Child, and their visits went well with the Child being comfortable, excited, and affectionate. *See id.* at 33-34. Mother also believes that termination would cause a long-term negative impact on the Child because the Child identifies Mother as her mother. *See id.* at 35.

Mother's argument again fails to appreciate our standard of review. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M., supra*.

Here, the record supports the orphans' court's findings. The Child was in a pre-adoptive placement, where she was safe, happy, and excited. ***See***

N.T., 4/8/25, at 74, 86. She viewed her foster parents as parental figures and called them "mom" and "dad." *Id.* at 75, 92. The caseworker testified that she believed the Child had a stronger bond with her foster parents than with Mother. *Id.* at 75. The Catholic Charities family advocate testified that the Child recognized Mother but not as her mom. *See* N.T., 7/16/25, at 20-21. The PA Child case coordinator reiterated that the Child's foster home was pre-adoptive, where the Child was safe, all her needs were being met, and she looked to her foster parents as her parental figures. *See id.* at 26-27. Although the PA Child supervisor testified that the Child referred to Mother as "mom," she also noted that the Child would get restless during visits and was not distressed at the end of a visit. *See id.* at 34. The Child was happy to see her resource parents at the end of visits and was comfortable when she was reunited with them. *See id.* at 35. Another individual from PA Child also testified that although the Child knows Mother as "mom" she calls her foster mother "mom" more. *See id.* at 46. Further, the Child was okay when leaving Mother and excited to see her foster mother. *See id.* at 49. Lastly, the caseworker testified that it was in the Child's best interest to terminate parental rights. *See id.* at 60. In its on-the-record decision, the orphans' court specifically found these witnesses to be credible. *Id.* at 80-82, 84, 86.

Thus, the record supports the orphans' court's decision to terminate Mother's parental rights. We reiterate that our role is to review the record for an abuse of discretion and for whether evidence supports the court's

conclusions, not to search the record for contrary conclusions or substitute our judgment for that of the orphans' court. *See S.K.L.R.*, 256 A.3d at 1124. We discern no error of law or abuse of discretion in the orphans' court's decision under Section 2511(b).

In sum, we hold that the orphans' court did not abuse its discretion or commit an error of law in terminating Mother's parental rights pursuant to Section 2511 of the Adoption Act. Given our decision to affirm the orphans' court's termination decree, Mother's challenge to the goal change order in her third issue is moot. *See A.H.*, 247 A.3d at 446 (citation omitted).

Decree and order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/25/2026