J-S21015-24

2024 PA Super 161

| IN THE INTEREST OF: R.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 624 EDA 2024 |

Appeal from the Order Entered January 12, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s):  CP-52-DP-0000020-2022

| IN THE INTEREST OF: H.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 625 EDA 2024 |

Appeal from the Order Entered January 12, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s):  CP-52-DP-0000022-2021

BEFORE:  LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

OPINION BY LAZARUS, P.J.:                    **FILED JULY 30, 2024**

J.A.H. (Father) appeals from the orders,[1] entered in the Court of

Common Pleas of Pike County, determining that visitation with Father is

---

[1] Father has filed separate notices of appeal, one for each docket, at 624 EDA 2024 and 625 EDA 2024. ***See Commonwealth v. Walker***, 185 A.3d 960, 976 (Pa. 2018) ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed."); ***see also In re M.P.***, 204 A.3d 976, 981 (Pa.
*(Footnote Continued Next Page)*

contrary to the safety or well-being of R.H. (born 10/2021) and H.H. (born 11/2017) (collectively, Children), specifically given the nature of Father's pending criminal charges, Father's bail conditions, Father's failure to have an established bond with Children, and Father having been indicated as a perpetrator of child abuse.  After careful review, we affirm.

The trial court set forth the factual and procedural history as follows:

On July 30, 2021, the Pike County Children & Youth Agency ([]the Agency[]) filed an application for emergency protective custody of [Children], alleging that [Children were] without proper care or control, *to wit*, that the home was in an unsafe and deplorable condition.  We note that [Father] was a registered sex offender and incarcerated at the time of this filing, charged with multiple crimes associated with the sexual abuse of other children residing in the same home.  On July 30, 2021, the court granted emergency protective custody of [Children] to the Agency and ordered that a hearing be held on August 2, 2021.  On August 2, 2021, following a hearing, the court issued a shelter care order granting the Agency full legal and physical custody of [Children] and placing [Children] in foster care.  Also on August 3, 2021, the Agency filed a dependency petition.  The following day, the court issued an order scheduling a hearing on the dependency petition for August 20, 2021.  On August 20, 2021, the court entered an order of adjudication and disposition[,] finding clear and convincing evidence to substantiate the allegations contained within the [] dependency petition and maintaining full legal and physical custody of [Children] with the Agency.  On May 2, 2022, the court entered an order terminating court supervision, but on December 2, 2022, the Agency filed a new application for emergency protective custody.

_____

Super. 2019) (applying **Walker** holding to children's fast track appeals).  **But see Commonwealth v. Young**, 265 A.3d 462, 477 n.19 (Pa. 2021) (expressly overruling holding in **Walker** that failure to file separate appeals requires appellate court to quash appeal).  Father's appeals were consolidated *sua sponte* by our Court on March 27, 2024.  **See** Order, 3/27/24; **see also** Pa.R.A.P. 513.

On December 5, 2022, the court issued a shelter care order, granting the Agency's petition and placing [Children] in the full legal and physical custody of the Agency. On December 6, 2022, the Agency filed a dependency petition, and a hearing was scheduled for December 8, 2022. On December 9, 2022, the court entered an order of adjudication and disposition. On December 22, 2022, counsel for [Children's] mother. . . filed a motion for expedited permanency review and a hearing was scheduled for January 12, 2023. On January 13, 2023, the court entered a permanency review order scheduling an additional permanency review [hearing] on April 5, 2023. On April 12, 2023, the court entered a permanency review order scheduling an additional permanency review hearing on August 9, 2023. On August 10, 2023, the court entered a permanency review order scheduling an additional permanency review hearing on December 20, 2023. On October 5, 2023, [Father] filed a notice of appeal, request for transcript, and an *in forma pauperis* application [] to challenge the August 10, 2023[] order. On or about January 12, 2024, the Superior Court quashed the appeal. On the same date, [the court] entered a permanency review order maintaining the status quo, specifically noting that [Father] was heard on the issue of visitation and that visitation between [Children] and [Father] is contrary to [Children's] safety and well-being due to his incarceration, indication as a perpetrator of child abuse, bail conditions precluding contact between himself and [Children], and his failure to have an established bond with [Children].

Trial Court Opinion, 3/19/24, at 1-3 (unnecessary capitalization omitted).

Father filed timely notices of appeal and Pa.R.A.P 1925(b) concise statements of errors complained of on appeal. Father raises the following questions for our review:

1. Whether the trial court committed an error of law and/or an abuse of discretion by adjudicating [F]ather as a grave threat based on the face of the record[,] as [Father] is distinguishable from the father in **Interest of C.B.**, [861 A.2d 287 (Pa. Super. 2004),] such that the grave threat analysis does not preclude [Father's] visitation.

2. Whether the trial court committed an error of law and/or an abuse of discretion by not providing [Father] timely notice of actions in the case []or an ability to timely contest those actions[,]

as the record does not show a determination at hearings of [the Agency's] compliance with notice requirements, [and Father] was unable to timely contest his alleged criminal matters which[,] although referred to[,] do not appear in the record of these cases and were relied upon in the January [12], 2024 [order].

Appellant's Brief, at 7 (unnecessary capitalization omitted).

Before considering Father's claims, we must determine whether this Court has jurisdiction over the instant appeal. Generally, an appeal lies only from a final order, unless permitted by rule or statute. *See In the Interest of: L.B.*, 229 A.3d 971, 975 (Pa. Super. 2020). "[A] final order is one that disposes of all claims and all parties." *Id.*; *see also* Pa.R.A.P. 341(b). It is incumbent upon this Court "to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order." *L.B.*, 229 A.3d at 975 (citations and quotation marks omitted). This Court has previously found orders suspending parental visitation to be final orders, *see, e.g.*, *C.B.*, 861 A.2d at 289 n.1, or to be appealable under Pa.R.A.P. 313, the collateral order doctrine. *See, e.g., L.B.*, 299 A.3d at 975-77.

Father argues that we have jurisdiction because the instant appeal is to a final goal change order that is appealable under Rule 341. *See* Appellant's Brief, at 5 (citing *In re H.S.W.C.-B*, 836 A.2d 908, 911 (Pa. 2003)). Upon our review, we conclude that the instant orders fail the requirements of Rule 341(b), as they do not dispose of all claims and all parties. Moreover, as the trial court specifically stated, the orders maintained the status quo, did not change the permanency goals, and indicated that another permanency review hearing would be held on May 8, 2024. *See* Permanency Review Order,

3/19/24, at 9. Thus, the January 12, 2024 orders were not final. ***See***

Pa.R.A.P. 341.

Accordingly, to invoke our jurisdiction to review Father's claims, the

orders must satisfy the requirements of the collateral order doctrine.

> The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. ***See*** Pa.R.A.P. 313.

> Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right. To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

***In the Interest of: J.M.***, 219 A.3d 645, 655 (Pa. Super. 2019) (citation

omitted).

Here, Father asks us to make two determinations: (1) whether the court

erred when it determined he posed a grave threat to Children and therefore

visitation was contrary to their safety or well-being, and (2) whether the court

erred by not providing Father timely notice of actions in the case. We conclude

that Father has satisfied each of the prongs of the collateral order doctrine, as

discussed below, and, thus, we may review the merits of his claims.

Beginning with the first prong of the collateral order doctrine, we must

determine whether the orders are separable from and collateral to the main

cause of action. An order is separable from and collateral to the main cause

- 5 -

of action if it is "entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute." *J.M.*, 219 A.3d at 655 (citations and quotation marks omitted). In dependency cases, "this Court has not been consistent with its interpretation of the main cause of action for purposes of [Rule] 313."[2] *Id.* at 657.

Nevertheless, we understand that "[t]he dependency adjudication and disposition certainly are the backbone of the cause of action, especially considering the [] court loses jurisdiction once the child at issue is no longer a child or no longer dependent." *Id.* at 658 (citation omitted). Further, "[o]nce a child is adjudicated dependent, the [] court is tasked with addressing many issues that relate to the best interest[s] of the child but may have little to do with the original basis for adjudicating the child dependent." *Id.*; *see also In re R.P.*, 956 A.2d 449, 454 (Pa. Super. 2008) (noting dependency

---

[2] This Court summarized the conflicting determinations as follows:

> Sometimes we have placed the emphasis on the underlying dependency adjudication and disposition, even if the case has progressed into the permanency review stage, *see* [*In re*] *Tameka M.*, [534 A.2d 782 (Pa. Super. 1987) (en banc); *In re*] *N.E.*, [787 A.2d 1040 (Pa. Super. 2001); *In re*] *J.R.*, [875 A.2d 1111 (Pa. Super. 2005). O]ther times we have focused on one of the broad goals in the particular stage of the case, *see* [*In re*] *J.S.*[, 980 A.2d 117 (Pa. Super. 2009),] and [*In re*] *W.H.*, 25 A.3d 330 (Pa. Super. 2011); and still other times we have looked to the purpose of the particular hearing, *see* [*In re*] *T.R.*[, 665 A.2d 1260 (Pa. Super. 1995), *rev'd on other grounds*, 731 A.2d 1276 (Pa. 1999) (plurality),] and [*Interest of*] *N.M.*, [186 A.3d 998 (Pa. Super. 2018)].

*J.M.*, 219 at 657-58.

adjudication and dispositional hearings address different issues than permanency review hearings). Accordingly, the Court in **_J.M._** recognized the unique nature of dependency proceedings due to the court's "ongoing plenary jurisdiction[.]" **_J.M._**, 219 A.3d at 659.

We find that Father's claims relating to the permanency review orders, specifically the court's decision that visitation with Father is contrary to the best interests of Children, are separable from and collateral to the main causes of action—Children's dependency adjudication and disposition. Thus, we conclude the orders satisfy the first prong of the collateral order doctrine.

As to the second prong of the collateral order doctrine—whether the right involved is too important to be denied review—we have long held that a parent has a constitutionally protected liberty interest in visiting a dependent child. **_See In re C.J._**, 729 A.2d 89, 94 (Pa. Super. 1999). That right, however, is not without limits. **_See id._** at 94-95. This prong, as with the first and third prongs, must be clearly satisfied and demonstrated by the appellant. **_See J.M._**, 219 A.3d at 655. In **_J.M._**, we found that the orders did not satisfy the second prong of the collateral order doctrine because the orders simply limited the mother's visits with the children and did not prohibit visitation entirely. **_See id._** at 660-61. In contrast, in **_L.B._**, the order at issue completely denied the appellant-father's visits and made it unclear when visitation might resume. **_See L.B.,_** 229 A.3d at 976.

Here, the orders at issue completely prohibit Father's visitation with Children for the reasons provided and discussed **_infra_**, and do not indicate

how or when this prohibition might change. Father contends that these orders effectively change the permanency goals from reunification to adoption, and, thus, the orders denying visitation with Children involve a right too important to be denied review. **See** Appellant's Brief, at 20. We agree and find that the trial court's orders impact a right too important to be denied review because they result in the complete denial of visitation. **See L.B.,** 229 A.3d at 976. Consequently, Father has met the second prong of the collateral order doctrine.

As to the third prong of the collateral order doctrine—whether the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost—in **J.M.**, this Court determined the order at issue failed on this prong because the appellant-mother could resume visits as long as she and the children were drug-free. **See J.M.**, 219 A.3d at 661. Importantly, the Court in **J.M.** noted that another permanency review hearing was to be held one month after the order was docketed and this issue could again be addressed with the latest evidence. **Id.**

In contrast, the Court in **L.B.** determined that, in light of the grave threat determination, combined with the lack of any clear indication as to when visits may resume, postponing review of the issue would cause the claimed right to be irreparably lost. **See L.B.**, 229 A.3d at 976.

Here, the orders at issue are more akin to the facts in **L.B.**, rather than **J.M.** Though the trial court in the instant case did schedule another

permanency review hearing approximately four months later, it was not clear, absent an extraordinary change of circumstances, whether Father could have presented any quantum of evidence to change the court's visitation decision after the court determined Father posed a grave threat to Children. Ultimately, these orders result in complete denial of visitation, and we determine that postponing review of the issues would cause Father's claimed rights to be irreparably lost. Therefore, we conclude that we have jurisdiction to review Father's claims under the collateral order doctrine and will proceed to analyze the merits of those claims. *See* Pa.R.A.P. 313.

> Our standard of review for dependency cases is well-settled:
>
> In dependency proceedings[,] our scope of review is broad. Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility. We accord great weight to the trial judge's credibility determinations. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

*In re M.W.*, 842 A.2d 425, 428 (Pa. Super. 2004) (citation and internal brackets omitted).

In Father's first issue on appeal, he argues that the trial court erred by determining that Father poses a grave threat to Children and that visitation with Father is contrary to the safety and well-being of Children. ***See*** Appellant's Brief, at 20. Specifically, Father argues that the trial court's dependance on ***C.B.***, ***supra***, was improper, as the facts and record are

distinguishable insofar as the facts in *C.B.* indicated that the father "had been heinously sexually abusing the child's sibling in front of the child and that the Commonwealth provided evidence of the abuse through a forensic pediatrician, two psychologists, and two caseworkers." *Id.* (citing *C.B.*, 861 A.2d at 297). Father argues that, here, the Agency has not presented medical or psychological evidence, and that the trial court has not heard any testimony contesting the facts as presented by the Agency. Finally, Father contends that such a decision effectively changes "the pre-hearing goal of reunification to . . . terminating [F]ather's parental rights." *Id.* We conclude that Father is not entitled to relief.

In a dependency case, "[t]he standard against which visitation is measured . . . depends upon the goal mandated in the family service plan. Where . . . reunification still remains the goal of the family service plan, visitation will not be denied or reduced unless it poses a grave threat." *C.B.*, 861 A.2d at 293 (citation omitted). If the goal is not reunification, "visitation may be limited or denied if it is in the best interests of the [] children." *Id.* "The grave threat standard is met when the evidence clearly shows that a parent is unfit to associate with his or her children[.]" *Id.* at 294 (citation and quotation marks omitted). This standard requires evidence that "the parent demonstrates a severe mental or moral deficiency that constitutes a grave threat to the child." *Id.* (citation omitted).

In the instant case, Children's placement plan has concurrent goals of return to parent/guardian and adoption. *See* Permanency Review Order,

1/12/24, at 2-3. As such, the trial court stated the following to support its finding that Father "represents a grave threat" to Children and, thus, visitation is contrary to the safety or well-being of Children: "[Father] has been indicated as a perpetrator of child abuse, [] the bail conditions in his [open] criminal matters preclude contact with [Children], and [Father] was incarcerated before he formed a bond with [H.H. and prior to the birth of R.H.]." Trial Court Opinion, 3/19/24, at 4. The trial court determined this finding was substantiated by testimony of an Agency caseworker at the January 11, 2024 hearing that Father "has an indicated status and that he is or should be fully aware of the conditions imposed in his criminal matters involving crimes against children and rape of a child[,]" and additional testimony by the caseworker that Father "was in the past and remains a registered sex offender." *Id.*; *see also* N.T. Permanency Hearing, 1/11/24, at 14-17.

In *C.B.*, the appellant-father's visits were suspended by the trial court after the trial court concluded the father posed a grave threat to the child. *See C.B.*, 861 A.2d at 294. The trial court found by clear and convincing evidence that the father had sexually abused one child and, based on the violent nature of the conduct, that the father posed a grave threat to another child. *Id.* This Court agreed that the father displayed a moral deficiency such that he constituted a grave threat to the child, regardless of whether the conduct resulted in a criminal conviction. *Id.*

In **Green v. Sneeringer**, 635 A.2d 1074 (Pa. Super. 1993), the appellant-father also sought visitation rights with his child. The trial court determined, and this Court agreed, that the father's conviction for the murder of the child's mother was sufficient to show a moral deficiency constituting a grave threat to the child. **Id.** at 1075, 1076-77; **see also L.B.**, 229 A.3d at 978 (holding trial court is "ultimate arbiter" of whether parent poses grave threat to child and determining visitation).

Here, upon our review, we conclude that the findings of the trial court are supported by the record. The court heard from the Agency caseworker that Father had at least one indicated case of abuse against him, that Father was incarcerated at the time of the hearing on charges related to child pornography and rape of a child, and that the Agency did not believe it was in Children's best interest to have visitation with Father. **See** N.T. Permanency Hearing, 1/11/24, at 14-15. Father had the opportunity to cross-examine the caseworker, and at no time did he attempt to challenge her earlier testimony. **See id.** at 16-17. In addition, the caseworker testified that Father is a registered sex offender, that he does not have a significant relationship with either child, that R.H. was born after Father's incarceration, and that H.H. was an infant or toddler the last time H.H. had any contact with Father. **Id.** at 17. The court also had the benefit of an investigation report, initiated after a March 11, 2023 referral, indicating Father as a perpetrator of sexual abuse against a step-child. **See generally** Exhibit B ("Investigation/Assessment Outcome Report"). Viewing these facts in their totality, we discern no error with the

trial court's determination that Father has displayed such moral depravity that he constitutes a grave threat to Children, regardless of the fact that his criminal charges are still pending. ***See C.B.***, ***supra***.

Father's second claim on appeal is that the trial court erred by not providing him with notices of hearings and not establishing whether the Commonwealth had complied with notice requirements. ***See*** Appellant's Brief, at 19. Father argues that various Rules of Juvenile Court Procedure require notice to parents or guardians of shelter care hearings, the right to counsel, dependency adjudication hearings, and any subsequent hearings. ***See*** Appellant's Brief, at 24-25 (citing Pa.R.J.C.P. 1241, 1242, 1363, 1360, 1361, 1406, 1331, and 1600). Father alleges that he either was not provided with notice or that the court did not comply with notice requirements with respect to Children's shelter care hearings, dependency adjudication, and permanency review hearings. Upon our review, we find that Father's argument fails to conform to the requirements of the Pennsylvania Rules of Appellate Procedure[3] and, therefore, this claim is waived.[4]

---

[3] ***See*** Pa.R.A.P. 2101 ("Briefs . . . shall conform in all material aspects with the requirements of these rules"); ***see also*** Pa.R.A.P. 2119 (addressing specific requirements of argument section of appellate brief).

[4] In addition, we note that Father's attempts to raise claims related to lack of notice for past shelter care hearings, the dependency adjudication hearing, and permanency review hearings held from December 2022 to August 2023 are untimely. Father's current appeal is timely only with respect to the orders entered January 12, 2024. Further, Father attended the January 11, 2024 permanency review hearing and there was no testimony on the record as to

*(Footnote Continued Next Page)*

"[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009). "It is not the obligation of this Court [] to formulate Appellant's arguments for him." ***Id.***; ***see also Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.")

Here, Father's brief makes only general allegations of lack of notice, stating that "[f]or the shelter care hearings, dependency adjudication/disposition[,] as well as permanency review hearings in this matter[,] the record contains no [] compliance [with the Rules of Juvenile Court Procedure]." Appellant's Brief, at 26 (unnecessary capitalization omitted). Father does not cite to the record, specify which permanency review hearing notices were not compliant, or explain why the claim is timely/not waived. ***See*** Appellant's Brief, at 24-28; ***see also supra*** at n.4. The Agency assumed custody of Children on December 5, 2022, and Children were

---

any issues with notice of that specific hearing. ***See generally*** N.T. Permanency Hearing, 1/11/24, at 11-24.

To be timely, a notice of appeal must be filed within thirty days after the entry of the order from which the appeal is taken. ***See*** Pa.R.A.P. 903(a). This Court is without authority to extend the thirty-day period unless there is fraud or a breakdown in the processes of the court. ***See*** Pa.R.A.P. 105(b). Neither of those exceptions applies here, thus, we decline to review Father's claims related to lack of notice for past hearings as we lack jurisdiction due to untimeliness of those claims.

adjudicated dependent on December 9, 2022. *See* Trial Court Opinion, 3/19/24, at 2. The trial court held permanency review hearings on January 12, 2023, April 5, 2023, August 9, 2023, and January 11, 2024. Father's brief is not explicit or specific as to which hearings proceeded without proper notice or proper procedure regarding notice.[5]

Father has failed to provide a discussion of the claim with citation to relevant authority and fails to develop the issue with any particularity with respect to the record herein. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017). Therefore, we conclude that Father has failed to develop the issue in a meaningful fashion such that it substantially impedes this Court's review. *See id.*; *see also* Pa.R.A.P. 2119. Thus, Father's claim is waived for lack of development. *See Johnson*, 985 A.2d at 924; *see also Coulter*, 94 A.3d at 1088.

Further, we conclude that Father improperly relies on *In re K.G.*, 185 A.3d 1080 (Pa. Super. 2018) (Table), arguing that "[t]he facts are the same in that required notices were not tendered, the court did not make record findings of compliance[,] . . . and the record does not contain any certifications of service of petitions[.]" Appellant's Brief, at 28. Father states that a non-precedential decision may be cited for persuasive value pursuant to Pa.R.A.P.

_____

[5] We also note that Father filed a previous appeal on October 5, 2023, at docket number 2820 EDA 2023, appealing from the order entered by the trial court on August 10, 2023. This Court quashed Father's appeal after determining it was not from an appealable order. *See* Order, 1/12/24 (per curiam).

126(b) and Superior Court I.O.P. 65.37. **See** Appellant's Brief, at 28. However, Father fails to note that Rule 126(b) specifically refers to decisions filed after May 1, 2019, and the above case was filed February 1, 2018. **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of Superior Court filed after May 1, 2019, may be cited for persuasive value). As such, we do not consider this authority. Consequently, Father is not entitled to relief.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/30/2024