J-A28005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KELLY N. HERRMANN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMY J. HERRMANN | : | |
| | : | |
| Appellant | : | No. 334 MDA 2025 |

Appeal from the Order Entered February 12, 2025
In the Court of Common Pleas of Berks County Civil Division at No(s):
24-2421

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM PER CURIAM:                    **FILED MARCH 13, 2026**

Jeremy J. Herrmann (Father) appeals *pro se* from the custody order entered by the Berks County Court of Common Pleas, which granted Kelly N. Herrmann (Mother) sole legal and primary physical custody of Father's and Mother's ten-year-old son, J.H., and five-year-old daughter, K.H. (collectively, the Children).  Father argues that the court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to enter the order.  *See* 23 Pa.C.S.A. §§ 5401-5482.  After review, we affirm.

The trial court provided the following factual and procedural history in its Appellate Rule 1925(a) opinion:

> Mother and Father were married on December 29, 2007. They are the natural parents of [the Children].  The parties separated on November 14, 2021 and were divorced on April 13, 2022.

This case has a complicated procedural history: Father and Mother first resided in Pennsylvania and then moved to California and then to Reno, Nevada. Mother and the Children moved to Susanville, California to be closer to a hospital that could provide care for their oldest daughter. After this child passed away, Mother and the Children moved back to Father in Nevada. A Temporary Protection Order was entered against Father on November 13, 2021. The parties separated on November 14, 2021. Mother moved with the minor Children back to Susanville, California, where she filed for divorce.

The divorce and custody cases were heard in Washoe County, Nevada. An Order deciding these matters was entered on April 13, 2022. Pursuant to this Order, Mother was awarded sole legal and primary physical custody of the Children and she was permitted to relocate back to Susanville, California with the Children because it was in their best interests and because they only moved to Nevada out of medical necessity to obtain care for their daughter. Father did not appeal this decision. Father was awarded two video calls per week, provided he was sober.

In July of 2022, Father filed a notice of change of address with the Nevada court indicating he had changed his address from Reno, Nevada to Montana.[FN 3]

FN 3. Apparently, according to a footnote to the Nevada court's Order of April 30, 2024, a hearing had been held in this case in Nevada on February 15, 2024. Father attended the hearing remotely from Arizona via Zoom, but his mailing address was in Montana at that time.

Mother moved to the home of her parents in Berks County, Pennsylvania on July 1, 2023. Through counsel, she registered the foreign Custody Order from the Washoe County Court in Nevada with the Court of Common Pleas of Berks County. She also filed a notice of change of address with the Court in Nevada [in July 2023] indicating that she had relocated from California to Pennsylvania. [In August 2023, Father filed a motion in Nevada for an order to enforce the divorce decree and/or for an order to show cause

regarding contempt. The Nevada court held a hearing on the matter in February 2024.]

On March 15, 2024, Mother filed a Petition to Modify Custody in Berks County. Ten days later, on March 25, 2024, Father filed a Motion for Change of Custody or Visitation with the Nevada trial court. On April 17, 2024, Father filed a Request for Conference between Judges to Establish Jurisdiction in the Nevada Court, asking that the Nevada Judge contact the undersigned to establish jurisdiction and asserting that the only [c]ourt that could assume jurisdiction other than Nevada is the Lassen Superior Court in California.

On April 30, 2024, after an informal judicial conference with this [c]ourt, the Nevada court, *sua sponte*, found Father's Motion to be moot because neither party nor the Children resided in the state of Nevada. Those facts were of record so, under the law, there was no other possible determination, whether argued or not. There was no "swap."

Father filed an appeal of Nevada's April 30, 2024 Order in the Court of Appeals of the state of Nevada. On June 14, 2024, Father filed a Change of Address to Verdi, Nevada in the Court of Common Pleas of Berks County. On September 20, 2024, a three-judge panel in the state of Nevada affirmed the district court order on the basis that Nevada no longer had exclusive, continuing jurisdiction.

A Custody Trial was held [in Pennsylvania] on December 4, 2024 and, after obtaining the transcript and reviewing the evidence, our Decision and Order were entered on the docket on February 12, 2025. [. . .]

Trial Court Opinion (T.C.O.), 4/9/25, at 1-3 (internal citations and some footnotes omitted) (parties' names adjusted to "Father" and "Mother").

Father timely filed this appeal. He raises the following twelve issues for our review, which we reorder for ease of disposition:

- 3 -

1. Did the trial court abuse its discretion and violate due process by improperly limiting Father's Pa.R.A.P. 1925(b) Statement to one page under threat of waiver, thereby hindering his ability to adequately preserve issues for appeal?

2. Did the Trial Court err in its February 11, 2025, Order by finding Nevada lost Continuing Exclusive Jurisdiction (CEJ) under 23 Pa.C.S.A. § 5422(a)(2), based on an erroneous factual finding that Father did not reside in Nevada and by misconstruing Father's ability to preserve Nevada's jurisdiction, when Father was, in fact, residing in Nevada (as noted in the court's own Findings of Fact #2 and #18) and maintained significant connections with Nevada through, inter alia, court-ordered monthly supervised child visitations in Reno, thereby preserving Nevada's CEJ under § 5422(a)(1)?

3. Did the Trial Court err by asserting "initial home state jurisdiction" for Pennsylvania under 23 Pa.C.S.A. § 5421 when Nevada, the decree-issuing state, retained CEJ at the time Mother commenced the Pennsylvania action, thereby precluding Pennsylvania from exercising initial jurisdiction?

4. Did the Trial Court violate 23 Pa.C.S.A. § 5426 (Simultaneous Proceedings) by exercising its jurisdiction after being informed that Father had commenced a custody proceeding in Nevada (the state with CEJ)— specifically Father's Motion for Change of Custody filed March 25, 2024, in direct response to Mother's March 15, 2024, Pennsylvania filing and her illegal relocation— without first staying its own proceeding and properly communicating with the Nevada court as mandated, and before Nevada had validly terminated or stayed its proceeding or determined Pennsylvania was a more appropriate forum?

5. Did the Trial Court err by relying on a UCCJEA conference call whose very necessity is questionable given the court's primary stated jurisdictional grounds (PA as home state, NV lost CEJ as all parties supposedly left), and which was, in any event, fatally flawed by being unrecorded, held with conflicting dates, and by denying

Father his statutory right (NRS 125A.275; J.C. v. K.C.) to participate or present facts and legal arguments regarding jurisdiction before the transfer determination, thereby violating due process?

6. Did the Trial Court err by failing to conduct the mandatory significant connection or inconvenient forum analyses under 23 Pa.C.S.A. §§ 5422 and 5427 before assuming jurisdiction, relying instead on a flawed "home state" determination?

7. Did the Trial Court err as a matter of law in its February 11, 2025, Order by exercising jurisdiction when such jurisdiction was predicated upon Mother's acknowledged violation of the specific, limited relocation authorization in the April 13, 2022, Nevada Divorce Decree (authorizing relocation to Susanville, California only), constituting unjustifiable conduct under 23 Pa.C.S.A. § 5428, thereby mandating that the Pennsylvania court decline jurisdiction, particularly in light of cases like Beese v. Calehuff?

8. Did the Trial Court err in its Pa.R.A.P. 1925(a) Memorandum by improperly introducing, for the first time, an argument that Mother's illegal relocation might be excused by alleged domestic violence under 23 Pa.C.S.A. § 5337(k), thereby attempting a post-hoc justification for its flawed jurisdictional ruling and prejudicing Father who had no opportunity to rebut this complex factual and legal excuse at Trial?

9. Did the trial court err by failing to properly apply the "clean hands" doctrine to preclude Mother from benefiting from her illegal relocation?

10. Was Father denied due process by the trial court's refusal to permit virtual participation in the custody trial under Pa.R.C.P. 1930.3 despite documented good cause (financial and physical hardship) and the court's subsequent imposition of unaffordable and physically burdensome travel for visitation?

11. Did the trial court abuse its discretion and deny due process by making numerous findings of fact that were

unsupported by, or contradictory to, the evidence of record, including but not limited to mischaracterizations of Father's parental guidance, risk assessment, self-care ability, housing, mental health, criminal record, and the circumstances of a deceased child's death, while ignoring evidence adverse to Mother?

12. Did the trial court exhibit judicial bias, denying Father a fair hearing, through a pattern of erroneous rulings, unsupported findings, mischaracterization of facts and law, disparate treatment of parties, use of biased language ("her children"), an inconsistent approach to jurisdictional determinations including the UCCJEA call, and improper post-hoc introduction of legal authorities?

Father's Brief at 19-23 (parties' names adjusted to "Father" and "Mother").

We begin by noting the difficulty this Court has had in discerning which issues Father has properly preserved for our review and adequately argued in his brief. Father filed two concise statements of errors complained of on appeal with the trial court. Father's first statement was three pages, single-spaced, and raised sixteen issues, along with a list of case law. Upon receiving that statement, the trial court ordered Father to file a "***Concise*** Statement." ***See*** Order, 3/14/25 (emphasis in original) (footnote omitted). The trial court included a footnote that specified, a "statement that is over one page long, verbose and redundant violates the relevant mandatory Rules of Appellate Procedure 1925(b)(4)(i), (iv) and 2135." ***Id.*** (citation omitted). Father then filed a second concise statement, which was one page, hand-written, and raised approximately nine issues, along with harm suffered, relief sought, and conclusion sections. Now, on appeal, Father raises twelve issues in the

statement of the questions involved section in his brief. These issues do not fully match either concise statement.

Moreover, Father's brief is one hundred pages, and the argument section begins on page thirty-nine. In contravention of our Appellate Rules, his argument is not clearly divided into sections for the twelve issues he listed in his statement of the questions involved. **See** Pa.R.A.P. 2119(a). Instead, this section has numerous headings labeled "A" through "L," and ending with "VIII." These headings do not clearly align with Father's twelve issues, and some raise new arguments not included in his statement of the questions involved in his brief. **See generally** Father's Brief at 39-95. Most headings also contain multiple subsections. For example, Section D has twenty-two numbered paragraphs, each purporting to raise an additional sub-issue. Additionally, many sections throughout his argument are repetitive, with Father making the same or similar arguments multiple times.

Most troubling is the fact that throughout the majority of Father's argument, he fails to provide citations to the record and to tell us when or where he raised his claimed error to the trial court. **See** Pa.R.A.P. 2119(c), (e). For many of his issues, Father also fails to meaningfully cite legal authority or cogently explain how his cited authority supports his argument. **See** Pa.R.A.P. 2119(a)-(b). We recognize that Father included an appendix to his brief with purported relevant case law which he claims supports his arguments. However, he admits that this case law was removed from his brief "due to word limitations." **See** Father's Brief at 13. To the extent that this

appendix takes Father's brief over the 14,000-word count limit, he fails to explain why we should consider it. More importantly, a list of over twenty cases with a few sentences summarizing the cases and purporting to explain why they are relevant does not cogently support Father's argument, as contemplated by our Appellate Rules and case law.

We are cognizant of Father's *pro se* status. Nevertheless, it is well-settled that this status affords him no special benefit, and he must comply with our Rules of Appellate Procedure. **See Commonwealth v. Vurimindi**, 200 A.3d 1031, 1037-38 (Pa. Super. 2018) (citations omitted). Moreover, "any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **Id.** (citation omitted). Equally well-settled is the fact that this Court will not act as an advocate or develop arguments on behalf of an appellant. **See Interest of R.H.**, 320 A.3d 706, 716 (Pa. Super. 2024) (citations omitted). If an issue is not properly developed with citation to legal authority; it is waived. **See B.S.G. v. D.M.C.**, 255 A.3d 528, 535 (Pa. Super. 2021) (citations omitted). Nor will we scour a record to find evidence to support an appellant's argument. **See Milby v. Pote**, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted). We will only address the issues that Father has properly raised and argued in this appeal.

Related to the above discussion, Father's first issue alleges that the trial court abused its discretion and violated his due process rights by improperly limiting his concise statement "to a mere one page, under threat of waiver."

Father's Brief at 92. Father claims this severely prejudiced him in his ability to adequately preserve all meritorious issues for appellate review. ***Id.*** at 93. Father asserts that this Court should not strictly waive issues reasonably discernible from the record and argued in his brief. ***Id.*** (citations omitted).

Father's characterization of the trial court's order is inaccurate. The trial court did not specifically limit his concise statement "to a mere one page." Instead, as noted above, the court ordered Father to file a **concise** statement. The court reminded Father that a statement that is "over one page long, **verbose and redundant**" violates the Appellate Rules. Order, 3/14/25 (emphasis added) (citation omitted). The court did not accept Father's original three-page concise statement that was also verbose and redundant, and it reminded him of the rules for a concise statement.

We agree with the trial court that Father's first concise statement was redundant. For example, Father raised at least nine issues dealing with the trial court's jurisdiction under the UCCJEA. Moreover, as will be explained below, Father has waived some of his issues due to a lack of proper development in his brief or because he raised new issues in the argument section of his brief that were not included in his statement of the questions involved. These issues are not waived strictly because of his one-page concise statement. Father's first issue merits no relief.

Father's next eight appellate issues relate to his argument that Pennsylvania does not have jurisdiction over this matter pursuant to the UCCJEA. As these issues are related, we address them together.

Because Father challenges whether the trial court had subject matter jurisdiction, his claim presents a pure question of law. *See J.S. v. R.S.S.*, 231 A.3d 942, 947 (Pa. Super. 2020) (citation omitted). Our standard of review is *de novo*, and our scope of review is plenary. *Id.* (citation omitted).

The "purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." *Boback v. Pershing*, 311 A.3d 1126, 1129 (Pa. Super. 2024) (citation omitted). The UCCJEA was also enacted to conform state law with the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, which is a federal law requiring "that states give full faith and credit to another jurisdiction's child custody determination made in compliance with the provisions of the PKPA." *R.M. v. J.S.*, 20 A.3d 496, 502-03 (Pa. Super. 2011) (citation omitted); *see also* U.S. Const. Art. IV, § 1.

On appeal, the crux of Father's argument is that Nevada, as the state that issued the original custody order, retained exclusive, continuing jurisdiction over the custody matter. Father claims Nevada retained jurisdiction because Father resided in Nevada and Father and the Children maintained significant connections there. Thus, Pennsylvania could not invoke initial home state jurisdiction. Further, Mother's relocation to Pennsylvania was illegal, and Pennsylvania should have declined jurisdiction.

Father's argument is misplaced and fails to appreciate the procedural posture of this case. In April 2024, the Nevada district court found that it no

longer had jurisdiction over this matter because neither party was located in Nevada. *See* Order Finding Motion Moot; Sua Sponte Order Regarding Jurisdiction, 4/30/24, at 2. Father appealed the district court's order. The Nevada appeals court affirmed, agreeing with the district court's decision to relinquish jurisdiction because Nevada had lost exclusive, continuing jurisdiction as the parties and Children no longer resided in Nevada. Order of Affirmance, 9/20/24, at 5-7.

Thus, the Nevada courts have relinquished jurisdiction and any of Father's arguments related to Nevada having exclusive, continuing jurisdiction are unavailing. This includes Father's arguments related to significant connections. The appropriate time and place for Father to make those arguments was to the Nevada courts. This Court does not have the authority to tell Nevada that it has jurisdiction over a case, when that state has determined it does not. We are bound by Nevada's decision.[1] *See* U.S. Const.

---

[1] Put another way, even if we agreed with Father (which we do not) that Nevada should not have relinquished jurisdiction, there is nothing we can do about that. Father's available remedy was to appeal the Nevada order, which he did, albeit unsuccessfully. This Court has no authority to overturn another court's decision. As the learned trial judge asked Father, "[W]hen it comes to foreign orders, you'd agree with me there is a thing that's full faith and credit with regard to orders and decisions of other states. So here's my question to you. Even if I decided that Nevada got it wrong, as [Mother's counsel] mentioned, they relinquished jurisdiction, so what ability do I have, at this point, to send this case back to Nevada even if I thought -- even if I did, and I said if, if I thought it was the appropriate forum?" N.T., 12/4/24, at 155. We agree with the trial court's astute assessment of the case. In response, Father cited a case "J.C. versus J.C" to support his position, which we discern
*(Footnote Continued Next Page)*

Art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."); **R.M.**, 20 A.3d at 502-03 (explaining that the "PKPA requires that states give full faith and credit to another jurisdiction's child custody determination made in compliance with the provisions of the PKPA" (citation omitted)).

Because Nevada determined it no longer has jurisdiction in this matter, we now analyze whether Pennsylvania has jurisdiction under the UCCJEA.

Here, the trial court found that it had authority to modify the Nevada custody order because neither the Children nor the parents resided in Nevada, Nevada had divested itself of jurisdiction, and Pennsylvania had jurisdiction to

_____

to be referring to **J.C. v. K.C.**, 179 A.3d 1124 (Pa. Super. 2018). We take this opportunity to distinguish **J.C.** and other similar cases.

In **J.C.**, this Court concluded that the trial court abused its discretion by relinquishing jurisdiction to New York under the UCCJEA without permitting Father to submit information relevant to the inconvenient forum determination or present facts and legal arguments pursuant to Section 5410, in conjunction with the telephone conference between the Pennsylvania and New York courts. This Court found that the trial court's contravention of its statutory obligations denied Father a full and fair ability to litigate his case and reversed the trial court's jurisdictional orders.

Father fails to appreciate the different procedural posture of **J.C.** In **J.C.**, it was the **Pennsylvania** court that relinquished jurisdiction and entered orders to that effect. The father in **J.C.** then appealed the **Pennsylvania** jurisdictional orders to this Court. However, here, **Nevada** relinquished jurisdiction and entered an order to that effect, not Pennsylvania. And the order Father is appealing here is a custody order, not an order relinquishing jurisdiction. Even if we agreed with Father, we simply could not grant him the same relief granted in **J.C.** because we have no authority to reverse a Nevada order. Again, Father should have raised his arguments to the Nevada appeals court when he appealed the Nevada jurisdictional order.

make an initial custody determination under the UCCJEA. *See* Decision and Order, 2/12/25, at 16.

UCCJEA Section 5423 explains when a Pennsylvania court has jurisdiction to modify a child custody determination made by another state.

> Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth may not modify a child custody determination made by a court of another state unless a court of this Commonwealth has jurisdiction to make an initial determination under section 5421 (a)(1) or (2) (relating to initial child custody jurisdiction) and:
>
> (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under section 5422 (relating to exclusive, continuing jurisdiction) or that a court of this Commonwealth would be a more convenient forum under section 5427 (relating to inconvenient forum); or
>
> (2) a court of this Commonwealth or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

23 Pa.C.S.A. § 5423.

To make a custody modification under Section 5423, the trial court must first have jurisdiction to make an initial custody determination under Section 5421. Section 5421 provides, in relevant part:

> **(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:
>
> (1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the

> commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth[.]

23 Pa.C.S.A. § 5421. The UCCJEA defines "home state" as the "state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." 23 Pa.C.S.A. § 5402.

Here, although Father contests the legality of Mother's relocation, he does not dispute that she relocated with the Children to Pennsylvania in July 2023, where they have remained since. At the time Mother filed her petition to modify custody in March 2024, the Children had lived with a parent, Mother, in Pennsylvania for at least six consecutive months. *See id.* Thus, Pennsylvania was the home state of the Children. Accordingly, the trial court had jurisdiction to make an initial child custody determination under Section 5421. *See* 23 Pa.C.S.A. § 5421(a)(1).

Because the trial court had jurisdiction to make an initial custody determination as the Children's home state, it met the first element needed to modify Nevada's child custody determination under Section 5423. It also met the second element because Nevada determined that it no longer had exclusive, continuing jurisdiction under Section 5422 as Father, Mother, and the Children no longer resided in Nevada. Therefore, the trial court had jurisdiction to modify Nevada's child custody determination under Section 5423. *See* 23 Pa.C.S.A. § 5423(1), (2).

- 14 -

The circumstances of Mother's relocation do not change our determination that Pennsylvania had jurisdiction under the UCCJEA. Father cites UCCJEA Section 5428 to support his proposition that Pennsylvania was required to decline jurisdiction because of Mother's unjustifiable conduct of illegally relocating to Pennsylvania. Father also claims that Mother's wrongful relocation made her hands "unclean" such that, as a matter of equity, the trial court should not have granted her relief.

Section 5428 provides:

> **(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction) or by other laws of this Commonwealth, if a court of this Commonwealth has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:
>
> > (1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
> >
> > (2) a court of the state otherwise having jurisdiction under sections 5421 (relating to initial child custody jurisdiction) through 5423 (relating to jurisdiction to modify determination) determines that this Commonwealth is a more appropriate forum under section 5427 (relating to inconvenient forum); or
> >
> > (3) no court of any other state would have jurisdiction under the criteria specified in sections 5421 through 5423.

23 Pa.C.S.A. § 5428.

Father's argument fails for two reasons. First, Father already attempted to argue, in his Nevada case, that Mother's relocation was illegal, and Nevada

was required to retain jurisdiction. This was a proper argument to make in Nevada because Mother's relocation purportedly violated a Nevada custody order, not a Pennsylvania order. However, Father failed to file a fact-specific affidavit or declaration in support of his motion as required by Nevada law, so the Nevada district court lacked jurisdiction to find contempt. *See* Order After Hearing on Enforcement, 4/30/24, at 3. On appeal, the Nevada court noted that Father failed to explain how the allegedly improper relocation impacted the district court's jurisdictional analysis or otherwise provided the district court with jurisdiction. Order of Affirmance, 9/20/24, at 6.

Second, even if Father gets another bite at the apple to raise this issue again to this Court, the trial court did not determine that Mother's relocation was unjustifiable conduct. The trial court explained:

> Father does not deny that he has PTSD from his years in the military serving in Iraq. He also had a problem with alcohol abuse, though he claims to be sober now. We found Mother's testimony credible that, when she tried to leave Father with her Children, he assaulted her. In fact, the youngest child was bruised when he grabbed the baby from Mother and carried it under his arm as he fled. Mother gave notice to the court in Nevada when she filed a Change of Address. We find that the fact that she did not notify Father she was relocating to Pennsylvania, was mitigated by the history of abuse at the hands of Father, both physical and emotional. The Nevada court gave her permission to relocate to California in the first instance, and gave Father the right to telephone contact with his Children only if he was sober. He was later given professionally supervised visitation. We find that Mother can provide a safer environment for her Children in Pennsylvania.

T.C.O. at 8-9 (internal citation omitted) (parties' names adjusted to "Father" and "Mother").

Section 5428's Uniform Law Comment and Pennsylvania's relocation statute support the trial court's decision. The Uniform Law Comment states:

> The focus in this section is on the unjustified conduct of the person who invokes the jurisdiction of the court. A technical illegality or wrong is insufficient to trigger the applicability of this section. This is particularly important in cases involving domestic violence and child abuse. Domestic violence victims should not be charged with unjustifiable conduct for conduct that occurred in the process of fleeing domestic violence, even if their conduct is technically illegal. Thus, if a parent flees with a child to escape domestic violence and in the process violates a joint custody decree, the case should not be automatically dismissed under this section. An inquiry must be made into whether the flight was justified under the circumstances of the case. [. . .]

23 Pa.C.S.A. § 5428, Uniform Law Comment. The relocation statute provides that any "consideration of a failure to provide reasonable notice [of a relocation] under subsection (i) shall be subject to mitigation if the court determines that such failure was caused in whole, or in part, by abuse." 23 Pa.C.S.A. § 5337(k).

At the custody trial, Mother testified to past incidents of abuse committed by Father including: pushing her once before they had children; losing his temper and punching holes in walls; punching and breaking a window of her vehicle while the parties' son was in the backseat; verbally abusing her; and sending her vulgar, threatening, and harassing text messages and emails, which were admitted into evidence. *See* N.T., 12/4/24,

at 35-36, 56-57. She also testified about the November 2021 incident, described above by the trial court, which culminated in Father pleading guilty to battery. ***See id.*** at 24-31. Mother obtained protection orders against Father in Nevada and California. ***See id.*** at 31, 35. The trial court referenced this conduct several times throughout its custody decision. ***See*** Decision and Order, 2/12/25, at 4, 7-10, 14. The court stated that there "is a history of violent behavior by Father toward Mother." ***Id.*** at 9. In its opinion, the court noted that testimony and exhibits submitted by Mother "at the custody trial established she was a battered wife." T.C.O. at 7 (citation omitted).

Thus, the trial court's conclusion that Mother relocating in violation of the Nevada custody order was mitigated by past abuse was supported by the record and relevant law. Moreover, as the trial court noted, Mother filed a change of address in Nevada, which indicates that she did not hide her relocation. Mother flew the Children back to Nevada for supervised monthly visits with Father, even after she relocated. ***See*** Decision and Order, 2/12/15, at 10; N.T. at 39; Order After Hearing on Enforcement, 4/30/24, at 3.

Father alleges that the trial court's reliance on domestic violence as a justification for Mother's relocation was improper because it was a "post-hoc" justification that was not litigated at trial. Again, we disagree.

At trial, Father's and Mother's history, including the past abusive conduct, was extensively litigated. Father had the opportunity to testify and cross-examine Mother and could have used either opportunity to rebut her testimony. The trial court was permitted to consider any past abuse in making

- 18 -

its jurisdiction and custody determinations. Father was not precluded from arguing to the trial court that Mother's relocation was illegal, which he did. He was also not precluded from attempting to rebut the trial court's reasoning on appeal to this Court, after receiving the trial court's opinion.[2]

Father also argues that the trial court erred by failing to conduct an inconvenient forum analysis pursuant to the UCCJEA. Father devoted two paragraphs of his argument to discussing inconvenient forum. **See** Father's Brief at 54-55, 70-71. He generally cites UCCJEA Section 5427, but he cites

_____

[2] Father repeatedly cites **Beese v. Calehuff**, 514 A.2d 182 (Pa. Super. 1986) to support his argument that the trial court should have declined to exercise jurisdiction. **Beese** was decided under the Uniform Child Custody Jurisdiction Act (UCCJA), the predecessor statute to the UCCJEA and is factually distinguishable from this case. In **Beese**, mother and father had one child while married. They divorced in Florida. The Florida court forbade either parent from removing the child from Florida without the other parent's or the court's permission. Mother subsequently tried to modify the restriction on removing the child from Florida but was denied. Nevertheless, mother brought the child to Pennsylvania, without father's or the court's permission. Mother and the child moved in with mother's new husband. Mother and her new husband, who claimed to be the child's biological father, filed a petition in Pennsylvania seeking custody of the child. The trial court determined that under the UCCJA, it could not properly assume jurisdiction over the matter because mother violated the Florida custody order. This Court affirmed, concluding that mother's removal of the child without proper permission precluded her and her current husband from litigating custody in Pennsylvania.

Here, however, as noted, Father should have, and attempted to, raise issues with Mother's relocation in Nevada, but was unsuccessful. The trial court found that Mother's relocation was mitigated by past abuse. Mother relocated first to California, with permission, and then went to Pennsylvania. Nevada has already relinquished jurisdiction, so even if the trial court had declined to exercise jurisdiction, this matter could not have gone back to Nevada, and Pennsylvania has been established as the Children's home state. **See** 23 Pa.C.S.A. § 5428(a)(3). Thus, **Beese** is inapposite here.

no other authority nor any evidence in the record to support his assertions. ***See id.*** This issue is waived. ***See B.S.G., supra; R.H., supra; Milby, supra***.

Even if not waived, Section 5427 states a "court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination ***may*** decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." 23 Pa.C.S.A. § 5427(a) (emphasis added). Therefore, contrary to Father's claims, the trial court was not mandated to decline jurisdiction under this section, and Pennsylvania was the Children's home state.

Lastly, Father raises various arguments related to alleged procedural errors the Pennsylvania and Nevada courts made under the UCCJEA. He claims that the trial court violated Section 5426 by failing to stay its proceeding and properly communicate with the Nevada court. ***See*** Father's Brief at 49. Father takes issue with the conference call that occurred between the Pennsylvania and Nevada courts, claiming that it violated the UCCJEA because it was unrecorded, and he was not given the opportunity to present facts and arguments before the jurisdiction decision was made.

We again reiterate that, after the conference call between the courts, Nevada issued an order relinquishing its jurisdiction. Father then appealed that order in Nevada. The appropriate time and place for Father to raise any procedural irregularities with the conference call that resulted in Nevada's order relinquishing jurisdiction was in the Nevada proceedings. ***See*** Father's

Brief at 68, 71 (citing Nevada law). When asked by the trial court at the custody trial if Father had raised those issues in the Nevada matters, Father admitted that he had not raised those issues and had failed to state the applicable law or appropriate arguments in Nevada. *See* N.T. at 104, 135. Father specifically admitted that he "didn't know about the UCCJEA." *Id.* at 135. Because Father failed to appropriately raise these issues and arguments in Nevada, they are waived. *Cf.* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")

Further, the Nevada appeals court specifically stated, "the district court ***properly held a conference*** with the Court of Common Pleas of Berks County, Pennsylvania—at [Father's] request—at which it was agreed that Pennsylvania had assumed jurisdiction . . . ." Order of Affirmance, 9/20/24, at 6-7 (emphasis added). Thus, the Nevada court indicated that the conference was proper.

Moreover, although Father claims that he was not given an opportunity to present facts and legal arguments before the courts decided on jurisdiction, this is unclear from the record. The Nevada court orders reference filings from Father and Mother related to jurisdiction and a hearing the district court held on February 15, 2024, wherein Father and Mother testified to their respective residences. *See* Order Finding Motion Moot; Sua Sponte Order Regarding Jurisdiction, 4/30/24; Order of Affirmance, 9/20/24.

We are not privy to what Father included in his filings to Nevada. However, the references to these filings and hearing appear to belie Father's

assertion that he had no opportunity to present facts and arguments regarding jurisdiction before the Nevada court made its decision. *See id.* Even if this opportunity was insufficient under the UCCJEA, as explained above, Father should have raised the propriety of the courts' communication in his appeal of the Nevada court order regarding jurisdiction. And then it was for Nevada to decide if Father was provided an adequate opportunity to present facts and arguments before it relinquished its jurisdiction.

As for Father's other arguments, even assuming there was an error, he fails to allege, let alone persuade us, how he suffered any prejudice from Pennsylvania not staying its proceeding until a jurisdiction determination was made. *See J.C. v. K.C.*, 179 A.3d 1124, 1129-1130 (Pa. Super. 2018) (citing *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000) for the proposition that relief is not warranted merely because some irregularity occurred during the trial; the moving party must demonstrate that he has suffered prejudice from the mistake.)

It appears from the record that Father filed a request for a conference call between the courts in Nevada on April 17, 2024, which occurred on or about April 26 or April 30, 2024. Father cites no authority to support the idea that this call, which occurred less than two weeks after Father's request, was untimely under the UCCJEA, and he again fails to allege how he was prejudiced by any delay. Further, Father's claim that the trial court exercised its jurisdiction prematurely is inaccurate. After Mother and Father filed exceptions to the custody hearing officer's recommended order, the court held

its custody trial in December 2024, which was after the Nevada appeals court affirmed the district court's decision. And the court did not enter its custody order until February 2025, well after Nevada had relinquished jurisdiction. We fail to see how Father suffered any prejudice from the lack of an official stay.

For the reasons explained above, Father's second through ninth issues related to jurisdiction merit no relief.

Turning to Father's remaining issues, we note our well-settled standard of review for custody matters:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Wilson v. Smyers*, 284 A.3d 509, 515 (Pa. Super. 2022) (quoting *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018)). Importantly, it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Id.* at 520 (citation omitted).

In a custody-related matter, the court's "paramount concern is the best interests of the children involved." *A.L.B. v. M.D.L.*, 239 A.3d 142, 148 (Pa.

Super. 2020) (citation omitted). When ordering any form of custody, a court must determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to specific factors that affect the safety of the child.[3] ***See*** 23 Pa.C.S.A. § 5328(a).

In his tenth issue, Father claims that he was denied due process because the trial court refused to permit him to virtually participate in the custody trial despite documented good cause. He also claims that he was denied due process because the court imposed unaffordable and physically burdensome travel for visitation on him.

This argument is waived due to lack of development. ***See B.S.G., supra; R.H., supra; Milby, supra***. Father devoted one paragraph in the argument section of his brief to this issue. ***See*** Father's Brief at 73-74. He cites no legal authority besides Pennsylvania Rule of Civil Procedure 1930.3 to support his argument, and he cites nothing in the record. Father also fails to mention due process in this paragraph.

---

[3] In 2024, the General Assembly enacted significant amendments to the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." ***Velasquez v. Miranda***, 321 A.3d 876, 886 n.6 (Pa. 2024). Kayden's Law expanded the factors to be considered in the court's best interest analysis and required the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child." ***Id.*** (citation omitted). These statutory amendments took legal effect on August 13, 2024. As the trial court entered the instant order in February 2025, Kayden's Law applies to this appeal.

Even if not waived, Rule 1930.3 provides that a party may testify electronically with "the approval of the court upon good cause shown." Pa.R.Civ.P. 1930.3. This right is not automatic. Although Father takes issue with not being permitted to attend virtually, he does not claim he was denied notice or an opportunity to be heard, as he participated in the custody trial in person. *See S.T.*, 192 A.3d at 1161 ("Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child." (citation and emphasis omitted)).

As for the costs of visitation, Father simply makes a bald allegation that the final custody order "imposed an unaffordable and physically burdensome travel schedule for minimal supervised visitation, effectively taking [Father] out of the [C]hildren's lives without following the proper legal avenue to do so." Father's Brief at 74. He fails to give any explanation as to why this travel schedule is unaffordable or physically burdensome, and he cites nothing in the record nor any legal authority to support his claim. This issue is waived. *See B.S.G., supra; R.H., supra; Milby, supra*.

Even if not waived, we would rely upon the trial court's explanation for its decision and the discretion it is afforded in custody matters. *See Wilson, supra*. The trial court explained as follows:

> [Father], under the current Custody Order, has more of an opportunity to see the Children in person if he comes to Pennsylvania than he had under the original Nevada court order. He previously lived in Pennsylvania, he is unemployed, very mobile, and has lived in his camper

before. [Father] could travel to Pennsylvania once a month, and he could see his Children through supervised visitation, which he could pay for through part-time work. Mother showed her cooperation with supervised visits when she flew the Children to Nevada in the past, without complaint about the costs.

T.C.O. at 9.

In his eleventh issue, Father claims that the trial court abused its discretion and denied him due process by making numerous factual findings that were unsupported by, or contradictory to, the evidence. In his statement of the questions involved, he alleges mischaracterizations of his parental guidance, risk assessment, self-care ability, housing, mental health, criminal record, and the circumstances of a deceased child's death. Father also claims the court ignored evidence adverse to Mother.

As noted above, in the due process section of his brief, Father includes twenty-two numbered paragraphs, each purporting to raise a separate error by the trial court. Some of these paragraphs have already been addressed in our analysis above. None of the other paragraphs properly develop arguments for our review. Father simply makes bald allegations about the court, without sufficient citations to the record or legal authority to support the allegations. This issue is waived.[4] **See B.S.G., supra; R.H., supra; Milby, supra**.

_____

[4] Even if not waived, it appears that Father is seeking that this Court re-weigh the evidence in his favor and find him to be more credible than Mother. This is not our role. **See Wilson**, 284 A.3d at 520 (noting that it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." (citation omitted)).

- 26 -

In his final issue, Father argues that the trial court exhibited judicial bias through numerous actions, many of which have already been addressed above. Within his argument, Father's allegations of bias mainly stem from factual findings or statements made by the trial court that Father disagrees with. We have reviewed the record and see no evidence that the court was biased against Father. That the court disagreed with Father or found Mother more credible does not demonstrate bias. Father's final issue merits no relief. To the extent that Father attempts to raise other issues in his argument that were not included in his statement of the questions involved, Father has failed to adequately develop those issues for our review, so he has waived them. ***See B.S.G., supra; R.H., supra; Milby, supra***.

In sum, the trial court had jurisdiction under Section 5423 of the UCCJEA to enter the custody order on appeal. This Court is bound by Nevada's decision to relinquish jurisdiction, and many of Father's arguments related to the UCCJEA should have been made to the Nevada courts. Most of Father's other claims have been waived because he failed to cogently develop them in his brief. For any claims that Father properly raised and developed, we discern no error of law or abuse of discretion in the trial court's decision.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/13/2026